Kenneth J. Behrendt,
Plaintiff-Appellant-Petitioner,

v.

Gulf Underwriters Insurance Co.
and Silvan Industries, Inc.,
Defendants-Respondents,

Auto Owners Insurance Co.,
Peter Harding, Cincinnati Insurance Co.,
W.D.M. Enterprises of Marinette, WI
and James E. Fisher,
Defendants.

Supreme Court

*No. 2006AP2910. Oral argument March 3, 2009.
—Decided July 9, 2009.*

2009 WI 71

(Also reported in 768 N.W.2d 568.)

For the plaintiff-appellant-petitioner there were briefs by *Mark S. Young, Rhonda L. Lanford,* and *Habush Habush & Rottier S.C.,* Milwaukee, and oral argument by *Mark S. Young.*

For the defendants-respondents there was a brief by *John J. Laffey, Michael D. Rosenberg, Sarah Thomas Pagels,* and *Whyte Hirschboeck Dudek S.C.,* Milwaukee, and oral argument by *John J. Laffey.*

¶ 1. N. PATRICK CROOKS, J. This is a review of an unpublished court of appeals decision[1] affirming an order granting summary judgment to Silvan Industries, Inc. (Silvan) and its insurer, Gulf Underwriters Insurance Co. (Gulf). Silvan and Gulf were among those sued by Kenneth Behrendt (Behrendt) after he was injured when a tank exploded while he was using it at his job in an oil change business. The tank had been fabricated as a favor to Behrendt's employer; it was made as a side job by someone who worked at Silvan at the time, and it was subsequently customized for use in the oil change business. Behrendt claimed that Silvan was negligent in permitting the tank to be made as a side job and vicariously liable for its employee's conduct in making the tank, but Silvan won dismissal of the claims, and

---

[1] *Behrendt v. Gulf Underwriters Ins. Co.,* No. 2006AP2910, unpublished slip op. (Wis. Ct. App. Feb. 26, 2008).

626

the court of appeals affirmed. Behrendt sought review here of the court of appeals' decision.

■

¶ 2. For the reasons set forth below, we affirm the grant of summary judgment on both the vicarious liability claim and the negligence claim. In order for an employer to be vicariously liable for an employee's act, the act must have been within the scope of employment. We agree with the court of appeals that summary judgment is appropriate on the claim of vicarious liability because the only evidence presented was that the tank was a side project that was completed for the employee's own purpose and thus was outside the scope of employment.

■■

¶ 3. As to the negligence claim, we reach the same result as the court of appeals though we arrive at that result via a somewhat different analysis. We agree with both the circuit court and the court of appeals that the focus here is properly on whether Silvan could have foreseen the effects of its policy. We also agree that, as a matter of law, it was not foreseeable that under Silvan's policy of allowing employees to do side projects, a non-pressurized tank built as a side job would later be modified and pressurized and, years later, explode and cause injury. However, while the court of appeals affirmed the grant of summary judgment on the grounds that the lack of foreseeability meant that Silvan had no duty to Behrendt, we reiterate our prior holdings in the vast majority of cases that every person is subject to a duty to exercise ordinary care in all of his or her activities. Silvan was subject to such a duty with regard to its policies on side jobs, and under these circum-

stances that duty required Silvan to exercise care that its policy on side jobs did not create an unreasonable risk of injury to Behrendt.

¶ 4. However, we then look at whether Silvan breached that duty by failing to exercise the care a reasonable person would use in similar circumstances. In most cases, whether a defendant breached a duty is a question of fact that is submitted to the jury and thus is not appropriate for summary judgment. In this case, however, it is the lack of foreseeable risk that convinces us, as a matter of law, that Silvan cannot be said to have failed to exercise ordinary care with regard to its policy on side jobs. Further, there is no material fact in dispute as to Silvan's policies about side jobs and its prohibition on employees making pressurized vessels as side jobs for personal use. There is in addition uncontroverted evidence in the record that Silvan took steps such as having holes cut into any tanks that were considered as scrap—as well as testimony of the tank's owner that this tank itself originally had holes in it—and that the point of cutting holes into the tanks was to keep them from being used with air pressure. Summary judgment is appropriate on the negligence claim because under these circumstances Silvan did not breach its duty to act with ordinary care.

## I. BACKGROUND

¶ 5. Behrendt's claims arise from the explosion of a tank, and the tank, to which fixtures were later added, was originally built as a side job by a Silvan employee. The questions raised in this appeal thus concern Silvan's policy of permitting employees to use company equipment and scrap materials to make items for personal use. Silvan manufactures tanks to be used under pressure, such as air receivers and water tanks.

628

Pressurized vessels are subject to strict manufacturing codes and third-party inspection; after each tank is tested, inspected and certified, it is labeled and registered with the National Board of Boilers and Pressure Vessel Inspectors.[2] Silvan's policy permitting side jobs prohibited employees from making pressurized tanks, and a system was in place to prevent employees' personal use of any tanks that were scrapped by the company: holes were cut in any scrapped tanks to make them worthless as pressurized vessels.

¶ 6. As noted above, one of the side jobs made by a Silvan employee is at the center of this case. When Daniel Linczeski (Linczeski) decided to open an oil change business, he needed a piece of equipment to collect oil drained from vehicles, and he went to his father-in-law, James Fisher (Fisher), who worked at Silvan. Fisher and a co-worker at Silvan, Rex Sommers (Sommers), welded pieces of scrap metal to create a large flat-bottomed cylinder with a domed top. The tank, which was several feet high and held about 55 gallons of oil, was delivered to Linczeski. Testimony in the record indicates that after the tank was fabricated, the system for collecting and disposing of oil was modified over a period of weeks. Linczeski got Peter Harding (Harding), a plumber, to plug several holes in the side of the tank. The plumber also fitted the tank with valves—one for the top that allowed oil to be drained into the tank but could be closed to keep oil from splashing out when the tank was moved, and one at the bottom of the tank to allow oil to be drained out of the tank. Other changes were made to make the tank

---

[2] Deposition testimony in the record described this process. It is also detailed at the web site of the National Board of Boilers and Pressure Vessel Inspectors, www.nationalboard.org.

more convenient to use; for example, wheels were added to the bottom to make it easy to move around, and studs were added to the side so that wrenches could be hung on the tank. Linczeski's modifications ultimately included having one of the plugs that had originally plugged a hole taken off the tank and substituting instead a fitting that could be hooked up to an air hose. Air pressure could then be used to empty the tank.[3]

¶ 7. The tank was apparently used without incident until June 15, 2004, when Behrendt, an employee of Linczeski's, was using the tank with air pressure. It exploded, and he was injured. Behrendt sued Silvan, alleging negligence; he also sued Fisher for negligence and, in connection with Fisher's alleged negligence, alleged vicarious liability against Silvan for Fisher's acts as its employee.[4] Behrendt alleged that the shape of the tank and the welds holding it together made it

---

[3] The record includes deposition testimony from Linczeski in which opposing counsel confirmed an answer apparently given in response to written interrogatories:

> Q: . . . This is the third to last entry. "At some point in the 1990s, did you decide to utilize a portable tank system that you would use to collect oil drained from customers' vehicles and use that type of portable tank to transfer oil from that tank to larger holding tanks using air pressure?" And it says, "Answer: Yes." Do you see that?
>
> A: Yes.
>
> Q: Okay. Is that accurate?
>
> A: Yes.

[4] Behrendt also sued Silvan for strict liability, but he has not appealed that claim's dismissal. Behrendt's other claims, against Fisher and Harding and their insurers, were allowed to proceed because there are disputed issues of fact. Those claims are not at issue here. Behrendt did not sue Sommers, the Silvan employee who assisted Fisher in constructing the tank;

630

dangerous to be used with air pressure; therefore, he argued, Fisher was liable for fabricating it, and Silvan was both vicariously liable as his employer and liable in its own right for having a policy permitting side jobs. Silvan argued it was only the subsequent pressurizing of the tank that was the reason for the explosion, and that in any event, the original construction was outside the scope of Fisher's employment. Therefore, Silvan argued, the company was not liable under any theory.

¶ 8. All the defendants moved for summary judgment. The Marinette County Circuit Court, Judge David G. Miron presiding, denied Fisher's and Harding's motions for summary judgment. The circuit court granted Silvan's summary judgment motion on Behrendt's strict liability claim because Silvan did not manufacture the tank. The circuit court also granted Silvan's summary judgment motion on the negligence claim and on the vicarious liability claim, ruling that public policy factors barred a finding of negligence against Silvan because the negligence was too remote from the injury and because allowing recovery would open the door to fraudulent claims and would have no sensible or just stopping point.[5]

¶ 9. Behrendt appealed. The court of appeals affirmed the circuit court decision. *Behrendt v. Gulf Underwriters Ins. Co.*, No. 2006AP2910, unpublished

---

Behrendt's claim for vicarious liability against Silvan is in connection with his claim of negligence involving Fisher.

[5] The circuit court granted summary judgment "with respect to Silvan and Gulf Underwriters" while addressing the question of vicarious liability in passing: "It's not for the benefit of Silvan. It's simply a fringe benefit that they're allowing their employees to have . . . ." The circuit court noted, "I don't have any problem applying the public policy consideration at this point to cut off responsibility here."

631

slip op. (Wis. Ct. App. Feb. 26, 2008). The court of appeals affirmed dismissal of the vicarious liability claim against Silvan because Fisher was not working within his scope of employment at Silvan when he built the tank. *Id.*, ¶ 9. The court stated that the side projects were "solely for the employees' personal benefit" and thus were so little actuated by the purpose of serving the employer that as a matter of law there was no vicarious liability. *Id.*, ¶¶ 8–9.

¶ 10. The court of appeals also affirmed summary judgment as to the negligence claim on the grounds that Silvan had no duty to Behrendt because any harm caused by Fisher was unforeseeable: "[T]his lack of foreseeability and absurdly attenuated chain of events . . . supports the circuit court's ruling . . . ." *Id.*, ¶ 13. The court of appeals stated that "[t]he only facts relevant to Silvan's duty are the existence of its policies permitting side jobs but prohibiting manufacture of pressure vessels." *Id.*

## II. STANDARD OF REVIEW

¶ 11. Review of a grant of summary judgment is de novo. *Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 315–17, 401 N.W.2d 816 (1987). Summary judgment is appropriate if there are no disputed issues of fact and the moving party is entitled to judgment as a matter of law. Wis. Stat. § 802.08(2) (2007–08). This Court views the facts in the light most favorable to the non-moving party. *Strozinsky v. Sch. Dist. of Brown Deer,* 2000 WI 97, ¶ 32, 237 Wis. 2d 19, 614 N.W.2d 443.

¶ 12. Vicarious liability can be ruled out, as a matter of law, if the evidence presented supports only the conclusion that the conduct is outside the scope of

employment. *Block v. Gomez,* 201 Wis. 2d 795, 805, 549 N.W.2d 783 (Ct. App. 1996).

## III. DISCUSSION

A. Negligence claim

¶ 13. We begin with the question of whether summary judgment was properly granted on the claim of negligence against Silvan.

¶ 14. "The analysis of the four elements necessary to state a claim for actionable negligence is the first consideration for a court when deciding motions for summary judgment . . . ." *Hoida, Inc. v. M&I Midstate Bank,* 2006 WI 69, ¶ 25, 291 Wis. 2d 283, 717 N.W.2d 17. The four elements are "(1) [a] duty of care on the part of the defendant; (2) a breach of that duty; (3) a causal connection between the conduct and the injury; and (4) an actual loss or damage as a result of the injury." *Rockweit v. Senecal,* 197 Wis. 2d 409, 418, 541 N.W.2d 742 (1995). "However, in Wisconsin, the elements of duty and breach are usually presented to the trier of fact in a question asking whether the defendant was negligent, and then the elements of causation and damages are addressed." *Nichols v. Progressive Ins. Co.,* 2008 WI 20, ¶ 12, 308 Wis. 2d 17, 746 N.W.2d 220 (citing Wis. JI—Civil 1005 (2006)).

¶ 15. The court of appeals, relying on language in *A.E. Investment Corp. v. Link Builders, Inc.,* 62 Wis. 2d 479, 214 N.W.2d 764 (1974), and *Rolph v. EBI Companies,* 159 Wis. 2d 518, 464 N.W.2d 667 (1991), affirmed the grant of summary judgment on the grounds that the first element, a duty of care on the part of the defendant, was not present here. *Behrendt,* unpub-

lished slip op., ¶ 11. The court focused on the issue of foreseeability, ruling that it was unforeseeable as a matter of law that a non-pressurized tank made as a side job by an employee would later be pressurized and, after years of use, explode and cause injury. *Id.*, ¶ 13. The court said "[d]uty is established 'when it can be said that [an act's potential to harm] was foreseeable . . . .' " *Id.*, ¶ 11 (quoting *Rolph*, 159 Wis. 2d at 532). The court of appeals held that in this case no duty was established as to Silvan because it cannot be said that it was foreseeable that Silvan's alleged act, permitting employees to do side jobs, would lead to injury. *Id.*, ¶ 13.

¶ 16. We agree with the court of appeals that the question of foreseeability is the proper one on which to focus. However, we disagree that the consideration of foreseeability necessarily leads to a finding of no duty in this case. Our analysis is framed by recent case law in which this court addressed questions of duty and breach. In *Nichols v. Progressive Northern Insurance Co.*, 2008 WI 20, ¶¶ 45, 47, 308 Wis. 2d 17, 746 N.W.2d 220, we reiterated that *Gritzner*[6] and *Rockweit* were "still good law in Wisconsin." *Nichols*, 308 Wis. 2d 17, ¶¶ 47. There we held that "in a negligence case, a defendant's conduct 'is not examined in terms of whether or not there is a duty to do a specific act, but rather whether the conduct satisfied the duty placed upon individuals to exercise that degree of care as would be exercised by a reasonable person under the circumstances.' " *Id.*, ¶ 45 (quoting *Gritzner v. Michael R.*, 2000 WI 68, 235 Wis. 2d 781, 611 N.W.2d 906).

[6] *Gritzner v. Michael R.*, 2000 WI 68, 235 Wis. 2d 781, 611 N.W.2d 906.

¶ 17. As has been often stated, "Wisconsin has long followed the minority view of duty set forth in the dissent of *Palsgraf v. Long Island Railroad* [162 N.E. 99 (N.Y. 1928)]. In that dissent, Judge Andrews explained that '[e]veryone owes to the world at large the duty of refraining from those acts that may unreasonably threaten the safety of others.' " *Alvarado v. Sersch,* 2003 WI 55, ¶ 13, 262 Wis. 2d 74, 662 N.W.2d 350 (citations omitted).

¶ 18. As we stated in *Hoida,* "[W]hat is within the duty of ordinary care depends on the circumstances under which the claimed duty arises. For example, what is comprised within ordinary care may depend on the relationship between the parties or on whether the alleged tortfeasor assumed a special role in regard to the injured party." *Hoida,* 291 Wis. 2d 283, ¶ 32. In *Hoida,* the plaintiff, a subcontractor who had been defrauded on a construction project, had argued that the duty of ordinary care encompassed requirements for the defendant bank to take steps to be sure that third parties were being paid for the work they did for the party which had taken the construction loan. The bank was, Hoida alleged, required by a duty of ordinary care "to identify the subcontractors and materialmen for the project; to verify that sufficient work on the project had been completed to 'justify disbursement'; and to collect lien waivers from [the plaintiff] before disbursing funds from [the tortfeasor's] loan." *Id.*, ¶ 20. In holding that the duty of ordinary care did not extend to those affirmative acts, we said that the duty of ordinary care "is determined by what would be reasonable given the facts and circumstances of the particular claim at hand." *Id.*, ¶ 32. In that case, among the circumstances we considered was contractual language

limiting the duties. ("These contractually assumed obligations and agreed upon limitations for [the bank] shaped its duty of ordinary care in disbursing the proceeds of the construction loan because they set out what the parties agreed was reasonable under the circumstances." *Id.*, ¶ 38.)

¶ 19. Additionally, we find two comments to language in Section 7 of the Third Restatement of Torts[7] helpful in clarifying the role foreseeability plays in the analysis. The Restatement says, "An actor ordinarily has a duty to exercise reasonable care when the actor's conduct creates a risk of physical harm." Restatement (Third) of Torts: Liability for Physical Harm § 7(a) (Proposed Final Draft No. 1, 2005).[8] The comments accompanying this stated principle are helpful because

---

[7] This court's long-standing practice has been to review and decide whether to adopt sections from the Restatements on a case-by-case basis as we deem it necessary. *See, e.g., Green v. Smith & Nephew AHP, Inc.*, 2001 WI 109, ¶ 29, 245 Wis. 2d 772, 629 N.W.2d 727. We have previously noted, without finding it necessary to adopt, helpful language from sections in the Restatements where it provides further support for the rationale for a holding. *See Pamperin v. Trinity Mem'l Hosp.*, 144 Wis. 2d 188, 205, 423 N.W.2d 848 (1988) (stating, "We further note that those courts imposing liability [on similar facts] have frequently looked to two sections of the Restatements— Restatement (Second) of Torts sec. 429 (1965), and Restatement (Second) of Agency sec. 267 (1958).").

[8] These sections are part of Proposed Final Draft No. 1 and are among the sections approved as of August 2008 by both the American Law Institute Council and its membership. According to the introduction, "The draft has not yet been published in final form only because the project has been expanded . . . . After that work is completed and approved, the Reporters will do their final editorial work and an update of the Reporters' Notes, and then the final text of this Restatement project will be

they make a clear distinction between the determinations required for duty and for breach.

> Sometimes reasonable minds cannot differ about whether an actor exercised reasonable care under § 8(b). In such cases courts take the question of negligence away from the jury and determine that the party was or was not negligent as a matter of law. Courts sometimes inaptly express this result in terms of duty. Here, the rubric of duty inaccurately conveys the impression that the court's decision is separate from and antecedent to the issue of negligence. In fact, these cases merely reflect the one-sidedness of the facts bearing on negligence, and *they should not be misunderstood as cases involving exemption from or modification of the ordinary duty of reasonable care.*

*Id.*, cmt. i (emphasis added).

> Courts do appropriately rule that the defendant has not breached a duty of reasonable care when reasonable minds cannot differ on that question. These determinations are based on the specific facts of the case, are applicable only to that case, and are appropriately cognizant of the role of the jury in factual determinations. *A lack of foreseeable risk in a specific case may be a basis for a no-breach determination, but such a ruling is not a no-duty determination.* Rather it is a determination that no reasonable person could find that the defendant has breached the duty of reasonable care.

*Id.*, cmt. j (emphasis added).

¶ 20. Though some language in prior Wisconsin cases invokes foreseeability inquiries in connection with duty—in fact, the court of appeals quoted that language in its analysis—the approach set forth in Section 7, Comments i and j, is most consistent with the

---

published." Restatement (Third) of Torts: Liability for Physical Harm Intro. (August 2008) (WESTLAW).

approach we have taken on the issue of duty in the vast majority of our cases. *See Nichols*, 308 Wis. 2d 17.

■

¶ 21. Occasionally, there are cases where a negligence claim fails because the duty of care does not encompass the acts or omissions that caused the harm,[9] but this is not one of them. The allegations are that the tank involved here was built at Silvan with its materials under a policy that permitted workers to fabricate personal projects at work. Under Wisconsin law and our *Palsgraf* minority approach, Silvan had a duty to exercise ordinary care under the circumstances so that its policy permitting side jobs did not create "an unreasonable risk of injury" to Behrendt.

■ ■

¶ 22. We next turn to the question of whether that duty was breached. We recognize that ordinarily, the issue of breach is one for the jury; however, there are exceptions in rare cases.[10] Admittedly, we have not always clearly drawn the distinction between duty and breach of duty. " 'Where the facts alleged to give rise to a duty are agreed upon, the question of the existence of

---

[9] In a footnoted response to the dissent, the *Hoida* majority clarified the nature of its holding as to duty: "[T]he majority opinion clearly concludes that [the defendants] have a duty to exercise ordinary care under the circumstances. What the majority opinion turns on is whether the circumstances of this case require [the defendants] to undertake all the affirmative acts that Hoida requests." *Hoida, Inc. v. M&I Midstate Bank,* 2006 WI 69, ¶ 30 n.15, 291 Wis. 2d 283, 717 N.W.2d 17 (citations omitted).

[10] The court of appeals described this case as "one of the rare negligence cases where summary judgment is appropriate," though its analysis focused on duty rather than breach. *Behrendt,* unpublished slip op., ¶ 10.

a duty is one of law. *This question is closely related to the question of whether a defendant is not negligent as a matter of law, i.e., based on the facts presented, no properly instructed, reasonable jury could find the defendant failed to exercise ordinary care.* Generally, this question is for the jury and should be decided as a matter of law before trial only in rare cases.' " *Rockweit,* 197 Wis. 2d at 419 (emphasis added) (quoting *Olson v. Ratzel,* 89 Wis. 2d 227, 251–52, 278 N.W.2d 238 (Ct. App. 1979)).

¶ 23. In a case where there is no genuine issue of material fact as to the breach and where there is a lack of foreseeable risk, it can be said as a matter of law that, based on the facts presented, there is no breach because "no properly instructed, reasonable jury could find the defendant failed to exercise ordinary care." *Id.* This is such a case.

¶ 24. Behrendt argued that summary judgment is not appropriate here because there are disputed facts,[11] but we are not persuaded that those facts are material to the question of breach. Rather, we, like the court of

---

[11] Behrendt argued that while Silvan says employees were not permitted to make pressurized tanks, deposition testimony indicates that it is possible that pressurized tanks were made as side jobs; however, there was no evidence put forward of the existence of any other pressurized tank that had been made as a side job. Behrendt also said while there was testimony that a supervisor's permission for side jobs was required, there was also testimony that side jobs may have been done without permission. However, the testimony as to this particular side job was that it was done by a supervisor, Fisher; further, it was the testimony of Fisher's supervisor that had he been asked about doing this particular side job, he would not "have a problem with that" so long as it was not done on the clock.

appeals, are satisfied that the material fact here is "the existence of [Silvan's] policies permitting side jobs but prohibiting manufacture of pressure vessels." *Behrendt,* unpublished slip op., ¶ 13.

¶ 25. The circuit court and court of appeals both noted the lack of foreseeability. The circuit court alluded to it when it discussed the "too remote" public policy consideration. The court of appeals more pointedly discussed "precisely this lack of foreseeability and absurdly attenuated chain of events" and concluded that it was "simply unforeseeable, as a matter of law," that Silvan's policy of permitting certain types of side jobs would result in harm. *Id.* The court of appeals reasoned that there was too much distance in the chain—beginning with Silvan's policy, an employee's fabrication of a tank as a side job, and the decision by a third party to modify the tank, and ending with the explosion of the tank some ten years later—for the risk of injury to be foreseeable. *Id.* We agree.

¶ 26. As we noted earlier, there is helpful language in the Third Restatement of Torts that explains the relationship among duty, breach, and foreseeability:

> Courts do appropriately rule that the defendant has not breached a duty of reasonable care when reasonable minds cannot differ on that question. These determinations are based on the specific facts of the case, are applicable only to that case, and are appropriately cognizant of the role of the jury in factual determinations. *A lack of foreseeable risk in a specific case may be a basis for a no-breach determination, but such a ruling is not a no-duty determination.* Rather it is a determination that no reasonable person could find that the defendant has breached the duty of reasonable care.

Restatement (Third) of Torts § 7 cmt. j (Proposed Final Draft No. 1, 2005) (emphasis added).

¶ 27. Here the lack of foreseeable risk is the basis for the determination that there was no breach, and, therefore, the granting of summary judgment as to the negligence claim was proper.

¶ 28. We recognize that this court has taken other paths in analyzing cases depending on the facts of each case. As noted above, under other circumstances, occasionally a claim may fail because a defendant's duty of care did not extend to the alleged acts or omissions. And certainly this case, like others, might be reviewed and legitimately resolved on public policy grounds. In that regard, we recognize that both the circuit court and the court of appeals alluded to public policy concerns presented by this case.

¶ 29. The application of public policy factors to preclude recovery for negligence has a long history in Wisconsin. *See Colla v. Mandella,* 1 Wis. 2d 594, 85 N.W.2d 345 (1957). In *Colla,* we articulated the six public policy factors that Wisconsin courts use today to limit liability in negligence claims: (1) "the injury is too remote from the negligence"; (2) the recovery is " 'wholly out of proportion to the culpability of the negligent tort-feasor' "; (3) the harm caused is highly extraordinary given the negligent act; (4) recovery "would place too unreasonable a burden" on the negligent tort-feasor; (5) recovery would be "too likely to open the way to fraudulent claims"; and (6) recovery would enter into " 'a field that has no sensible or just stopping point.' " *Id.* at 599 (citations omitted); *see also Fandrey v. Am. Family Mut. Ins. Co.,* 2004 WI 62, ¶¶ 30–35, 272 Wis. 2d 46, 680 N.W.2d 345. Any one of the six factors, if applicable, could preclude liability. *Hoida,* 291 Wis. 2d 283, ¶ 41.

¶ 30. Here, the first factor would be relevant. As recognized above, both the circuit court and the court of

appeals noted the attenuated chain of events. The circuit court referenced public policy factors in its decision: "So I think the too remote analysis is appropriate here. . . . I don't have any problem applying the public policy consideration at this point to cut off responsibility here."

¶ 31. However, we are satisfied that an analysis which clarifies that foreseeability is properly taken into consideration as to breach is the better approach here because it makes clear that we are not deviating from the *Palsgraf* minority position that we have adhered to in the vast majority of our cases.

B. Vicarious liability claim

¶ 32. The second claim we consider is Behrendt's claim of vicarious liability against Silvan. As we noted above, we review the grant of summary judgment de novo, and summary judgment can be appropriate for a claim of vicarious liability if the conduct is clearly outside the scope of employment. Vicarious liability can be ruled out as a matter of law if the evidence presented supports only the conclusion that the conduct is outside the scope of employment. *Block,* 201 Wis. 2d at 805. We hold that summary judgment was proper as to this claim. We agree with the court of appeals' application of *Block* to the evidence presented here.

¶ 33. Behrendt alleged in the complaint that Fisher performed negligent acts "while in the scope of his employment" and Silvan, as his employer is "therefore vicariously liable for any damages caused by his negligence." In his brief to this court, Behrendt argued that issues of fact exist as to whether Silvan is vicariously liable for the acts of Fisher or Sommers.

Behrendt's arguments on vicarious liability that depend on the acts of the co-worker, Sommers, are unavailing because they are irrelevant. The court of appeals correctly noted in a footnote that arguments about vicarious liability are only relevant as to Fisher's conduct because allegations of vicarious liability are related to Behrendt's claim against Fisher. No claim was brought by Behrendt against Sommers. We thus turn to the basis for the vicarious liability claim: whether the acts by Fischer that are allegedly negligent were within the scope of his employment at Silvan.

¶ 34. We have explained that a vicarious liability claim arises where "an employer is alleged to be vicariously liable for a negligent act or omission committed by its employee in the scope of employment. Thus, vicarious liability is based solely on the agency relationship of a master and servant." *L.L.N. v. Clauder,* 209 Wis. 2d 674, 698 n. 21, 563 N.W.2d 434 (1997) (citing *Shannon v. City of Milwaukee,* 94 Wis. 2d 364, 370, 289 N.W.2d 564 (1980); Restatement (Second) of Agency § 219(1) (1957)) (distinguishing between vicarious liability and negligent supervision). In other words, vicarious liability, premised on the negligent act committed by an employee, does not exist absent a finding that an employee was negligent.

¶ 35. The question as to vicarious liability is whether at the time of the act alleged, the employee's conduct was within the scope of his employment, which we have defined as conduct that is "actuated, at least in part, by a purpose to serve the employer." *Olson v. Connerly,* 156 Wis. 2d 488, 500, 457 N.W.2d 479 (1990). The question on summary judgment is whether there is any genuine issue of material fact about that.

¶ 36. Behrendt argued that the act of building the tank was "actuated, at least in part, by a purpose to serve the employer" because it was done under the umbrella of Silvan's policy of letting employees do these side jobs, and that policy had the purpose of serving Silvan because it increased employee morale.

¶ 37. Silvan argued that the party whose acts are in question is Fisher and that there is no evidence put forward that Fisher thought his acts were serving Silvan. Silvan additionally argued that the question is not whether the policy permitting side jobs benefitted Silvan, but rather whether the employee himself or herself was at least partly actuated by the purpose of serving the employer.

¶ 38. Behrendt's assertion that the policy of allowing the side jobs provided the benefit to Silvan of improved employee morale, even if it is true, does not mean that the worker who fabricated the tank was actuated by a purpose to serve the employer. The question is whether in making the tank Fisher (against whom negligence is alleged) was actuated by a purpose to serve the employer.

¶ 39. *Block* focuses on the employee's intended purpose. *Block,* 201 Wis. 2d at 806. The evidence in the record indicates that the tank, like the other side jobs, was built as a personal benefit to the employee. Fisher enlisted a co-worker to help fabricate the tank. Silvan was never paid for the tank or the materials or the labor. There is nothing in the record that shows any purpose to benefit the employer or any resulting benefit to the employer, either.

 

¶ 40. The court of appeals observed that "these side projects were solely for employees' personal benefit" and that no evidence was introduced that would

lead it to conclude otherwise. *Behrendt,* unpublished slip op., ¶ 9. It therefore held that summary judgment in Silvan's favor was proper on the question of vicarious liability. For the same reasons, we agree.

## IV. CONCLUSION

¶ 41. For the reasons set forth, we affirm the grant of summary judgment on both the vicarious liability claim and the negligence claim. In order for an employer to be vicariously liable for an employee's act, the act must have been within the scope of employment. We agree with the court of appeals that summary judgment is appropriate on the claim of vicarious liability because the only evidence presented was that the tank was a side project that was completed for the employee's own purpose and thus was outside the scope of employment.

¶ 42. As to the negligence claim, we reach the same result as the court of appeals though we arrive at that result via a somewhat different analysis. We agree with both the circuit court and the court of appeals that the focus here is properly on whether Silvan could have foreseen the effects of its policy. We also agree that, as a matter of law, it was not foreseeable that under Silvan's policy of allowing employees to do side projects, a non-pressurized tank built as a side job would later be modified and pressurized and, years later, explode and cause injury. However, while the court of appeals affirmed the grant of summary judgment on the grounds that the lack of foreseeability meant that Silvan had no duty to Behrendt, we reiterate our prior holdings in the vast majority of cases that every person is subject to a duty to exercise ordinary care in all of his or her activities. Silvan was subject to such a duty with regard to its policies on side jobs, and under these circum-

stances, that duty required Silvan to exercise care that its policy on side jobs did not create an unreasonable risk of injury to Behrendt.

¶ 43. However, we then look at whether Silvan breached that duty by failing to exercise the care a reasonable person would use in similar circumstances. In most cases, whether a defendant breached a duty is a question of fact that is submitted to the jury and thus is not appropriate for summary judgment. In this case, however, it is the lack of foreseeable risk that convinces us, as a matter of law, that Silvan cannot be said to have failed to exercise ordinary care with regard to its policy on side jobs. Further, there is no material fact in dispute as to Silvan's policies about side jobs and its prohibition on employees making pressurized vessels as side jobs for personal use. There is in addition uncontroverted evidence in the record that Silvan took steps such as having holes cut into any tanks that were considered as scrap—as well as testimony of the tank's owner that this tank itself originally had holes in it—and that the point of cutting holes into the tanks was to keep them from being used with air pressure. Summary judgment is appropriate on the negligence claim because under these circumstances Silvan did not breach its duty to act with ordinary care.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 44. SHIRLEY S. ABRAHAMSON, C.J. (*concurring*). I join the majority opinion. I write separately to address the issues raised in Justice Roggensack's concurring opinion.

¶ 45. Negligence law has evolved over the centuries and continues to evolve. No one has said that negligence law is easy to understand and apply or that

all of our cases fit together altogether comfortably and without any tension. Any attempt to synthesize our case law should be applauded.

¶ 46. But the problem with the concurrence, as I see it, is that it tries to make things simpler than they are and is therefore misleading. To quote Albert Einstein, "everything should be made as simple as possible but not simpler."

¶ 47. Justice Roggensack's concurrence essentially argues that the negligence analysis in Wisconsin differs depending on whether a defendant's alleged negligence is viewed as a negligent act or a negligent failure to act. The distinction between a negligence claim arising "from an allegation of a failure to act" and "a claim asserting that the act in question was negligently performed" is central to the argument set forth in the concurrence.[1]

¶ 48. The concurrence concludes that when a defendant's alleged negligence is viewed as an omission rather than an affirmative act, the court must first determine whether the defendant's general duty to exercise reasonable and ordinary care implied a more specific duty to perform the act that was omitted.[2] Furthermore, if the court determines that the defendant's general duty to exercise reasonable and

---

[1] Justice Roggensack's concurrence, ¶ 88.

[2] *See, e.g.,* Justice Roggensack's concurrence, ¶ 100 (stating that because *Hoida v. M & I Midstate Bank,* 2006 WI 69, 291 Wis. 2d 283, 717 N.W.2d 17, "turned on whether [M&I Midstate Bank's] *failure to take certain actions* was negligent by omission," the question presented "was whether M&I's duty of ordinary care under the circumstances required M&I to take the actions that Hoida claimed M&I had a duty to undertake" (emphasis in original)).

ordinary care did not imply a specific duty to perform the omitted act, the defendant as a matter of law cannot be negligent.[3]

¶ 49. The concurrence applies a different analysis when a defendant's alleged negligence is viewed as an affirmative act negligently performed or undertaken. The concurrence asserts that under these circumstances, the question of negligence simply is whether the defendant exercised ordinary care under the circumstances when performing or undertaking the act.[4] No time need be spent, according to the concurrence, analyzing whether the defendant's general duty to exercise reasonable and ordinary care implied a more specific duty to engage (or to refrain from engaging) in any particular conduct.

¶ 50. There are three essential problems with the concurring opinion's analysis.

¶ 51. First, attempts to distinguish between a negligent act (misfeasance) and a negligent omission (nonfeasance) have a long history in the law, and the distinction is generally recognized as a tenuous and misleading one. The concurrence is a throwback to earlier but not better days.

¶ 52. Second, Justice Roggensack's summary of the Wisconsin negligence cases law is incorrect. The

---

[3] *See* Justice Roggensack's concurrence, ¶ 106 ("If it is determined that the duty of ordinary care under the circumstances presented did not include taking the action which was omitted, that is the end of the analysis because all of the elements of a negligence claim will not have been proven.").

[4] *See, e.g.*, Justice Roggensack's concurrence, ¶ 117 ("Silvan acted affirmatively when it created the side job policy. Accordingly, Silvan's policy must have evidenced the exercise of reasonable care, which we have also characterized as ordinary care under the circumstances[.]" (internal citations omitted)).

decisions of this court set forth a unified negligence standard, applicable to all conduct, whether classified as an act or omission. The cases show that the question of negligence is whether the defendant's conduct (be it an act or omission) was consistent with the standard of reasonable and ordinary care. The cases also show that when a defendant's alleged negligence is viewed as an omission, Wisconsin's negligence standard does not require a determination whether the defendant had a duty under the circumstances to perform the omitted act. See also Wis JI—Civil 1005 (titled "Negligence: Defined"), which states that "[a] person is not using ordinary care and is negligent, if the person, without intending to do harm, does something (or fails to do something) that a reasonable person would recognize as creating an unreasonable risk of injury or damage to a person or property."[5]

[5] Indeed, the Reporters' Note to § 37 of the Restatement (Third) of Torts cites *Rockweit v. Senecal,* 197 Wis. 2d 409, 541 N.W.2d 742 (1995), for the proposition that Wisconsin "does not employ no-duty rules [but] nevertheless reaches the same result by employing public policy to avoid liability for those whose acts played no rule in creating risk to another." Restatement (Third) of Torts: Liability for Physical Harm § 37, at 719 (Reporters' Note) (Proposed Final Draft No. 1, 2005).

The concept of duty in tort law is in "turmoil." W. Jonathan Cardi & Michael D. Green, *Duty Wars,* 81 S. Cal. L. Rev. 671, 671 (2008). Courts and academics have offered varying accounts of the proper role for duty in contemporary tort law. *See, e.g., Fazzolari v. Portland School Dist.,* 734 P.2d 1326, 1331 (Or. 1987) ("[D]uty plays an affirmative role when an injured plaintiff invokes obligations arising from a defendant's particular status or relationships, or from legislation, beyond the generalized standards that the common law of negligence imposes on persons at large. In cases based solely on common-law negligence, 'no-duty' is a defensive argument asking a court to limit

the reach of these generalized standards as a matter of law."); *Coburn v. City of Tucson,* 691 P.2d 1078 (Ariz. 1984) ("Many tort decisions exhibit an unfortunate tendency to confuse the concepts of 'duty' and standard of conduct and to argue that the city is, or is not, under a duty to post warning signs, remove obstructions from the road or sidewalks, install traffic control sidewalks, install traffic control devices, fix potholes and the like. We believe that an attempt to equate the concept of 'duty' with such specific details of conduct is unwise. Attempting to define or evaluate conduct in terms of duty tends to rigidify the concept of negligence—a concept which, by definition, must vary from case to case, depending upon the relationship of the parties and the facts of each case." (internal citations omitted)); Dilan A. Esper & Gregory C. Keating, *Abusing "Duty",* 79 S. Cal. L. Rev. 265, 268 (2006) ("The role of 'duty' doctrine is to fix the legal standard applicable to the defendant's conduct. Duty rulings must therefore be categorical. They must specify the *general* standard of care owed by some class of potential injurers . . . ."); John C.P. Goldberg & Benjamin C. Zipursky, *The Moral of MacPherson,* 146 U. Pa. L. Rev. 1733, 1744 (1988) (concluding that a proper account of the concept of duty in the law of negligence "must conceive of duty as *relational,* that is, as owed by specific defendants or classes of defendants to specific plaintiffs or classes of plaintiffs, rather than by each individual to the word at large[,] . . . must conceive of duty as *relationship-sensitive, . . .* [and] must conceive of duty as a *non-instrumental* (or deontological) concept by taking serious the idea that 'duty' carries with it a notion of obligatory force"); W. Page Keeton et al., *Prosser and Keeton on Torts* § 53, at 356 (5th ed. 1984) ("It is better to reserve 'duty' for the problem of the relation between individuals which imposes upon one a legal obligation for the benefit of the other, and to deal with particular conduct in terms of a legal standard of what is required to meet the obligation. In other words, 'duty' is a question of whether the defendant is under any obligation for the benefit of the particular plaintiff; and in negligence cases, the duty is always the same—to conform to the legal standard of reasonable conduct in the light of the apparent risk.").

but also the Restatement (Third) of Torts: Liability for Physical Harm (Proposed Final Draft No. 1, 2005), an authority from which both the majority opinion and Justice Roggensack's concurrence seek guidance. The concurrence erroneously interprets the Restatement (Third) as supporting the concurring opinion's view that whenever the defendant's negligence consists of an omission rather than an act, the inquiry must be whether the defendant had an affirmative duty to perform the act that was omitted. Contrary to the concurrence, the Restatement (Third) recognizes that whenever the entire course of a person's conduct has created a risk of physical harm, the person is negligent if—by act or omission alike—the person fails to exercise reasonable and ordinary care.

I

¶ 54. The distinction between misfeasance (a negligent act) and nonfeasance (a negligent omission) has a long history in tort law, and the tenuous and misleading nature of the distinction between the two has been

---

The Restatement (Third) of Torts explains the role of duty as follows: "In most cases, courts . . . need not refer to duty on a case-by-case basis. Nevertheless, in some categories of cases, reasons of principle or policy dictate that liability should not be imposed. In these cases, courts use the rubric of duty to apply general categorical rules withholding liability. . . . No-duty rules are appropriate only when a court can promulgate relatively clear, categorical, bright-line rules of law applicable to a general class of cases." Restatement (Third) of Torts: Liability for Physical Harm § 7 cmt. a, at 90–91 (Proposed Final Draft No. 1, 2005).

For a discussion of the concept of duty in a case involving private nuisance, negligence and a possessor of land, see *Hocking v. City of Dodgeville*, 2009 WI 70, ¶¶ ___-___, ___ Wis. 2d ___, 768 N.W.2d 552 (Abrahamson, C.J., concurring).

frequently pointed out.[6] A negligent omission may be viewed as nonfeasance but also may be viewed as active negligence when the whole venture or enterprise is considered.[7] "[N]o rule has been formulated to prescribe whether courts are to characterize conduct as affirmative action with an embedded omission or as simple nonaction."[8]

¶ 55. Indeed, Justice Roggensack's concurrence itself acknowledges that a defendant's negligence often may be "characterized as either a failure to act or as an act negligently performed, depending on the lens that the author of the opinion applies."[9] Thus the analysis in the concurrence resting on the difference between action and omission rests on quicksand.

---

[6] *See, e.g., Prosser and Keeton on Torts* § 56, at 373–75 (5th ed. 1984); Restatement (Third) of Torts: Liability for Physical Harm § 37 cmt. c, at 711, Reporters' Note, cmt. a, at 718, 720–22 (Proposed Final Draft No. 1, 2005).

[7] *See, e.g.,* Fleming James, Jr., *Scope of Duty in Negligence Cases,* 47 N.W. U. L. Rev. 778, 800–09 (1952–53); Restatement (Third) of Torts: Liability for Physical Harm § 37 cmt. c, at 711 (Proposed Final Draft No. 1, 2005) ("The proper question is not whether an actor's specific failure to exercise reasonable care is an error of commission or omission. Instead, it is whether the actor's entire conduct created a risk of physical harm."). *See also Hocking,* 2009 WI 70, ¶ 31 (Abrahamson, C.J., concurring).

[8] 2 Dan B. Dobbs, *The Law of Torts* § 315, at 855 (2001).

[9] Justice Roggensack's concurrence, ¶ 88.

The concurrence struggles to determine which "lens" the majority opinion uses in the present case. The concurrence observes that "[t]he negligence claim Behrendt pled can be viewed as being based both on an affirmative act negligently undertaken and on a failure to act." Justice Roggensack's concurrence, ¶ 112. The concurrence then spends two paragraphs analyzing the majority opinion before concluding that the majority opinion "presumes" that Behrendt alleges the

## II

¶ 56. The decisions of this court state a unified negligence standard applicable to conduct, whether characterized as an act or an omission. This court has stated the negligence standard as follows: "A person is not using ordinary care and is negligent, if the person, without intending to do harm, does something (*or fails to do something*) that a reasonable person would recognize as creating an unreasonable risk of injury or damage to a person or property."[10] This standard requires a determination whether a defendant's conduct (be it action or omission) represents a failure to exercise reasonable and ordinary care under the circumstances, that is, whether a reasonable person in the defendant's position would have recognized the defendant's conduct as creating an unreasonable risk of injury or damage to a person or property.

¶ 57. This negligence standard, applicable equally to acts and omissions, has been stated time and again in the cases, dating back to 1931.[11]

---

negligent performance of an affirmative act rather than a negligent omission. *See* Justice Roggensack's concurrence, ¶¶ 113–114.

[10] *Alvarado v. Sersch,* 2003 WI 55, ¶ 14, 262 Wis. 2d 74, 662 N.W.2d 350 (emphasis added; quotation marks & citation omitted).

[11] *See, e.g., Gritzner v. Michael R.,* 2000 WI 68, 235 Wis. 2d 781, ¶ 22, 611 N.W.2d 906 (Wilcox, J., lead op.) ("A person is not using ordinary care and is negligent, if the person, without intending to do harm, does something (*or fails to do something*) that a reasonable person would recognize as creating an unreasonable risk of injury or damage to a person or property." (emphasis added; quoting Wis JI—Civil 1005)); *id.,* 235 Wis. 2d 781, ¶ 76 (Abrahamson, C.J., concurring/majority) ("A person is not using ordinary care and is negligent if the person *fails to do*

¶ 58. A recent line of cases drives home the point that even when a defendant's alleged negligence is viewed as an omission, Wisconsin's negligence standard requires a determination of whether the defendant's conduct comported with the standard of reasonable and ordinary care under the circumstances, rather than a

*something* that a reasonable person would recognize as creating an unreasonable risk of injury to another." (emphasis added)); *Rockweit v. Senecal,* 197 Wis. 2d 409, 424, 541 N.W.2d 742 (1995) ("A person fails to exercise ordinary care when, without intending to do any harm, he or she does something *or fails to do something* under circumstances in which a reasonable person would foresee that by his or her action *or failure to act,* he or she will subject a person or property to an unreasonable risk of injury or damage." (emphasis added; citation omitted)); *Shannon v. Shannon,* 150 Wis. 2d 434, 443–44, 442 N.W.2d 25 (1989) ("A person fails to exercise ordinary care when, without intending to do any wrong, he does an act *or omits a precaution* under circumstances in which a person of ordinary intelligence and prudence ought reasonably to foresee that such act *or omission* will subject him or his property, or the person or property of another, to an unreasonable risk of injury or damage." (emphasis added; citation omitted)); *Peters v. Holiday Inns, Inc.,* 89 Wis. 2d 115, 122–23, 278 N.W.2d 208 (1979) ("A person fails to exercise ordinary care when, without intending to do any wrong, he does an act *or omits a precaution* under circumstances in which a person of ordinary intelligence and prudence ought reasonably to foresee that such act *or omission* will subject him or his property, or the person or property of another to an unreasonable risk of injury or damage." (emphasis added; quotation marks and citation omitted)); *Osborne v. Montgomery,* 203 Wis. 223, 242, 234 N.W. 372 (1931) ("Every person is negligent when, without intending to do any wrong, he does such an act *or omits to take such a precaution* that under the circumstances present he, as an ordinary prudent person, ought reasonably to foresee that he will thereby expose the interests of another to an unreasonable risk of harm." (emphasis added)).

determination whether the defendant had a duty under the circumstances to perform an act that was omitted. The relevant decisions are *Rockweit v. Senecal,* 197 Wis. 2d 409, 541 N.W.2d 742 (1995), *Gritzner v. Michael R.,* 2000 WI 68, 235 Wis. 2d 781, 611 N.W.2d 906, and *Nichols v. Progressive Northern Insurance Co.,* 2008 WI 20, 308 Wis. 2d 17, 746 N.W.2d 220. These three cases show that the negligence standard in Wisconsin applies to allegedly negligent omissions as it does to allegedly negligent acts.

¶ 59. In *Rockweit,* defendant Ann Tynan spent the night at the same campground as 18–month-old Anthony Rockweit, who was at the campground with his parents. The campground had a communal fire pit. Tynan joined Anthony's family around the fire pit but otherwise had no connection to the fire or the pit. "Tynan did not maintain the fire pit in any manner, nor provide any necessary materials to fuel it at any time during her visit."[12] Tynan's only connection to the fire pit was that she sat beside it, socializing with other persons including Anthony's family.

¶ 60. Three individuals remained beside the fire pit when the evening reached its end: Tynan, Anthony's father, and another relative of Anthony. These three people went to bed without extinguishing the fire's smoldering embers. Anthony later woke up and slid into the fire pit, sustaining serious injuries.

¶ 61. By a guardian, Anthony sued numerous people, including Tynan and the other two people who were around the fire pit at the end of the evening. The jury found that Tynan was causally negligent and assigned her liability for 3% of Anthony's injuries.

---

[12] *Rockweit,* 197 Wis. 2d at 415.

¶ 62. On appeal, Tynan argued that "she did not have a duty to Anthony to extinguish the fire because Wisconsin law does not impose a duty to assist or preserve a person from a risk of injury or a hazardous situation created by another."[13]

¶ 63. The court of appeals classified Tynan's conduct as an affirmative act, namely "negligent management or control of a fire."[14] It affirmed the verdict against Tynan on that basis.

¶ 64. This court agreed with Tynan that the case was "a case of inaction."[15] It rejected the court of appeals' "suggestion that by socializing around the fire pit that evening, Tynan assumed an affirmative obligation to extinguish the embers."[16]

¶ 65. Nevertheless, this court also found "Tynan's argument that she cannot be held liable for Anthony's injuries because Wisconsin law does not impose a duty upon her to act to be without merit."[17] The *Rockweit* court stated that "Tynan did owe Anthony a common law duty, the duty to exercise ordinary care."[18] The

---

[13] *Id.* at 421.

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] *Id.* at 423.

[18] *Id.*

Justice Wilcox's *Rockweit* opinion is an opinion of all the justices of this court insofar as it concludes that under Wisconsin law Tynan owed a common-law duty to everyone to exercise ordinary care and rejects Tynan's argument that she could not be liable for Anthony's injuries because Wisconsin law did not impose a duty upon her to act. Justice Steinmetz's concurring opinion (joined by Chief Justice Day) departed from Justice Wilcox's opinion only insofar as Justice Wilcox's opinion concluded that credible evidence supported the jury's finding of

court then turned its attention to the question whether Tynan breached that duty by failing to put out the fire.[19]

¶ 66. In the *Gritzner* case, defendant Roger Bubner's girlfriend's son, Michael, sexually abused the Gritzners' daughter while she was in Bubner's home. Bubner allegedly knew that Michael had a propensity to

negligence. Justice Steinmetz concluded that the standard of due care was not violated. *See Rockweit,* 197 Wis. 2d at 433 (Steinmetz, J., concurring). Justice Steinmetz's opinion refers to Justice Wilcox's opinion as the majority opinion. *See id.* My concurring opinion in *Rockweit* (joined by Justice Bradley) addresses and discredits "the defendant's claim that 'Wisconsin law does not impose a duty upon one person to actively assist or preserve a person from a risk of injury created by another.'" *Rockweit,* 197 Wis. 2d at 429. My concurring opinion also refers to Justice Wilcox's opinion as the majority opinion. *See Rockweit,* 197 Wis. 2d at 430, 431 n.2, 432 (Abrahamson, J., concurring).

[19] *Rockweit,* 197 Wis. 2d at 423.

This court sustained the jury's finding that Tynan had breached her duty to exercise ordinary care and was negligent. The court concluded that the jury's finding was supported by credible evidence in the circuit court record. *See Rockweit,* 197 Wis. 2d at 424.

The *Rockweit* court went on to conclude on the basis of public policy considerations that Tynan should not be liable to Anthony despite her causal negligence. *See Rockweit,* 197 Wis. 2d at 425–29. The court reasoned that Anthony's injuries were wholly out of proportion to Tynan's culpability and were too remote from Tynan's negligence. It also reasoned that there would be no sensible stopping point if liability were imposed upon someone in Tynan's position.

"[E]ven when a duty of care exists and the other elements of negligence have been established, public policy considerations may preclude liability. However, Wisconsin courts address public policy concerns directly, rather than asking whether the defendant owed a 'duty' to the particular victim." *Gritzner,* 235 Wis. 2d 781, ¶ 24 (Wilcox, J., lead opinion) (footnote omitted).

sexually abuse other children. Bubner also allegedly failed to warn the Gritzners about Michael's propensity or to supervise Michael while Michael was with the Gritzners' daughter. The Gritzners filed a complaint against Bubner claiming (1) negligent failure to warn the Gritzners that Michael had a propensity toward sexual abuse; and (2) negligent failure to control Michael.[20]

¶ 67. The Gritzners' negligence claims were focused on Bubner's failures to act rather than on Bubner's affirmative actions. The lead opinion acknowledged that "[t]he Gritzners' claims against Bubner [were] based on Bubner's duty to take certain affirmative actions—to warn [the Gritzners] about Michael and to control Michael's behavior."[21]

¶ 68. Bubner "frame[d] his response to the Gritzners' claims under the rules governing affirmative duties to act in the Restatement (Second) of Torts . . . ."[22] Bubner's approach apparently worked at the circuit court, which dismissed the Gritzners' claims on the ground that "Bubner had no legal duty to warn the Gritzners about Michael's alleged propensities or to control Michael's conduct."[23]

¶ 69. This court, however, did not decide the case by determining whether Bubner had a duty to perform the acts that he allegedly had failed to perform. The lead opinion stated that "the crucial question in evaluating the Gritzners' claims is not whether Bubner had any 'duty' to take affirmative actions but whether Bubner's alleged failure to take certain actions was

---

[20] *Gritzner*, 235 Wis. 2d 781, ¶ 2 (Wilcox, J., lead opinion).

[21] *Id.*, ¶ 21 (Wilcox, J., lead opinion).

[22] *Id.*

[23] *Id.*, ¶ 13 (Wilcox, J., lead opinion).

consistent with his duty to exercise a reasonable degree of care."[24] Citing the lead opinion, the concurring/majority opinion similarly stated that "[a] person is not using ordinary care and is negligent if the person fails to do something that a reasonable person would recognize as creating an unreasonable risk of injury to another."[25]

¶ 70. The *Gritzner* court remanded the cause for a full factual resolution of the Gritzners' negligence claims.[26] The lead opinion would have dismissed the Gritzners' failure-to-warn claim but not on the ground that Bubner had no duty to warn the Gritzners and was not negligent. The lead opinion would have dismissed the failure-to-warn claim on the basis of public policy considerations.[27]

---

[24] *Id.*, ¶ 25 (Wilcox, J., lead opinion).

The *Gritzner* lead opinion also explained that although this court has considered and relied upon the provisions in the Restatement relating to affirmative duties to act, the court "has not expressly adopted this framework." *Gritzner*, 235 Wis. 2d 781, ¶ 22 (Wilcox, J., lead opinion). The lead opinion stated that "instead" of the Restatement provisions, "the general framework governing the duty of care in Wisconsin negligence actions is that: 'A person is negligent when [he or she] fails to exercise ordinary care. Ordinary care is the care which a reasonable person would use in similar circumstances. A person is not using ordinary care and is negligent, if the person, without intending to do harm, does something (or fails to do something) that a reasonable person would recognize as creating an unreasonable risk of injury or damage to a person or property.'" *Gritzner*, 235 Wis. 2d 781, ¶ 22 (Wilcox, J., lead opinion) (quoting Wis JI—Civil 1005; brackets in *Gritzner*).

[25] *Gritzner*, 235 Wis. 2d 781, ¶ 76 (Abrahamson, C.J., concurring/majority).

[26] *Id.*, ¶¶ 76, 86 (Abrahamson, C.J., concurring/majority).

[27] *Id.*, ¶¶ 28–44, 70 (Wilcox, J., lead opinion).

¶ 71. Justice Roggensack's concurrence cannot be reconciled with *Rockweit* or *Gritzner*. The concurrence contends that when a defendant's alleged negligence is viewed as an omission rather than an act, the court must determine whether the defendant had a duty under the circumstances to perform the act that was omitted. This court, however, did not decide *Rockweit* by determining whether Tynan had a duty to extinguish the camp fire and did not decide *Gritzner* by determining whether Bubner had a duty to warn the Gritzners or to control Michael. The *Rockweit* court found "Tynan's argument that she cannot be held liable for Anthony's injuries because Wisconsin law does not impose a duty upon her to act to be without merit."[28] The *Gritzner* court concluded that "the crucial question in evaluating the Gritzners' claims is not whether Bubner had any 'duty' to take affirmative actions but whether Bubner's alleged failure to take certain actions was consistent with his duty to exercise a reasonable degree of care."[29]

¶ 72. In *Nichols,* this court affirmed the vitality of *Rockweit* and *Gritzner*. The *Nichols* court was confronted with a decision of the court of appeals suggesting that in *Hoida, Inc. v. M&I Midstate Bank,* 2006 WI 69, 291 Wis. 2d 283, 717 N.W.2d 17—a decision authored by Justice Roggensack—this court had "overturned or backed away from" *Rockweit* and *Gritzner*.[30] The *Nichols* court made clear that "*Hoida* was not intended to overturn prior case law" and that "*Gritzner* and *Rockweit* are still good law in Wisconsin."[31] It

---

[28] *Rockweit,* 197 Wis. 2d at 423.

[29] *Gritzner,* 235 Wis. 2d 781, ¶ 25 (Wilcox, J., lead opinion).

[30] *Nichols,* 308 Wis. 2d 17, ¶ 34.

[31] *Id.,* ¶¶ 34, 47.

stated that "[n]othing in *Hoida* was intended to over-rule or change the principles of law expressed in *Gritzner* and *Rockweit*."[32]

¶ 73. The *Nichols* opinion confirmed that the negligence standard applied in *Rockweit* and *Gritzner* was correct. It concluded that "in a negligence case, a defendant's conduct is not examined in terms of whether or not there is a duty to do a specific act, but rather whether the conduct satisfied the duty placed upon individuals to exercise that degree of care as would be exercised by a reasonable person under the circumstances."[33]

¶ 74. Justice Roggensack's concurrence is no more consistent with *Nichols* than it is with *Rockweit* or *Gritzner*. The concurrence relies in large part upon Justice Roggensack's *Hoida* decision to set forth an argument about the negligence standard that contradicts the analysis in *Rockweit* and *Gritzner*.[34] Yet *Nichols* explicitly rejects the idea that Justice Roggensack's *Hoida* decision changed the law of negligence as it is explained in the *Rockweit* and *Gritzner* decisions. Furthermore, *Nichols* concludes, in direct contradiction to Justice Roggensack's concurrence, that in a negligence case, a defendant's conduct should not be analyzed in terms of whether the defendant had a duty to perform a specific act.

¶ 75. The *Nichols* case was decided just last year. Justice Crooks's majority opinion was joined by Justice Roggensack, as well as by Justices Bradley, Prosser, and

---

[32] *Id.*, ¶ 47.

[33] *Id.*, ¶ 45 (quoting *Gritzner*, 235 Wis. 2d 781, ¶ 24 (Wilcox, J., lead opinion)).

[34] *See* Justice Roggensack's concurrence, ¶¶ 101–102, 105, 108 (relying upon *Hoida*).

Ziegler.[35] One wonders what could have happened in the course of one year to make Justice Roggensack suddenly doubt the wisdom of Justice Crooks's careful discussion.

### III

¶ 76. The majority opinion in the present case seeks guidance from § 7 the Restatement (Third) of Torts: Liability for Physical Harm (Proposed Final Draft No. 1, 2005).[36] Justice Roggensack's concurrence does the same.[37]

¶ 77. Section 7(a) of the Restatement (Third) of Torts explains the circumstances under which a person is subject to the general duty to exercise reasonable and ordinary care. It provides in full as follows:

> An actor ordinarily has a duty to exercise reasonable care when the actor's conduct creates a risk of physical harm.

¶ 78. A related provision, § 37, "states the obverse" of § 7(a): In the absence of conduct creating a risk of physical harm to another, an actor ordinary has no duty of care to another.[38] Section 37 provides in full as follows:

> An actor whose conduct has not created a risk of physical harm to another has no duty of care to the

---

[35] The concurring opinion, which I authored and which Justice Butler joined, did not object to the majority opinion's discussion of *Rockweit* and *Gritzner* or its general discussion of the negligence standard in Wisconsin.

[36] *See* majority op., ¶¶ 19–20, 26.

[37] Justice Roggensack's concurrence, ¶ 114.

[38] Restatement (Third) of Torts: Liability for Physical Harm (Proposed Final Draft No. 1, 2005) § 7 cmt. l, at 99.

other unless a court determines that one of the affirmative duties provided in §§ 38–44 is applicable.

¶ 79. Under the Restatement (Third) approach, when the defendant's conduct has created a risk of physical harm to another, the defendant must exercise reasonable and ordinary care under the circumstances, and the question of negligence is whether the defendant has exercised such care.[39] When the defendant's conduct has not created a risk of physical harm to another, the question of the defendant's negligence turns on whether the defendant was subject to (and breached) a more specific affirmative duty to act.

¶ 80. Justice Roggensack's concurrence apparently concludes that under the Restatement (Third), a person is required to exercise reasonable and ordinary care only when performing affirmative acts. The concurrence states that "[s]ection 7's discussion of duty is limited to affirmative acts; it does not address duty based on an alleged failure to act."[40] The implication seems to be that the Restatement (Third) supports the concurring opinion's view that when a defendant's alleged negligence is viewed as an omission rather than an act, the inquiry should be whether the defendant had an affirmative duty to act under the circumstances

---

[39] *See* Restatement (Third) of Torts: Liability for Physical Harm § 3, at 34 (Proposed Final Draft No. 1, 2005) ("A person acts negligently if the person does not exercise reasonable care under all the circumstances.").

[40] *See* Justice Roggensack's concurrence, ¶ 114

The concurrence also relies upon the majority opinion's use of § 7 of the Restatement (Third) as evidence that the majority opinion views the defendant's alleged negligence in the present case as consisting of an affirmative act. *See* Justice Roggensack's concurrence, ¶¶ 113–115.

rather than whether the defendant exercised reasonable and ordinary care under the circumstances.

¶ 81. The concurrence misinterprets the approach of §§ 7 and 37 of the Restatement (Third).

¶ 82. Section 7(a) of the Restatement (Third) states that an actor[41] is to exercise reasonable and ordinary care when the actor's "conduct" creates a risk of physical harm. The meaning of the word "conduct" is broad. A defendant's "conduct" is limited neither to the defendant's affirmative acts nor to the particular conduct constituting the focal point of a negligence claim against the defendant.

¶ 83. This point is made clear by Restatement (Third) of Torts § 37 cmt. c., which explains how a court may distinguish between cases in which the defendant is to exercise reasonable and ordinary care under § 7(a) and cases in which the defendant's conduct must be analyzed in terms of more specific affirmative duties to act under §§ 38–44. The comment states that "[t]he proper question is not whether an actor's specific failure to exercise reasonable care is an error of commission or omission. Instead, it is whether the actor's entire conduct created a risk of physical harm."[42] In other words, the comment explicitly recognizes that in light of a person's entire course of conduct, the person

---

[41] The word "actor" in § 7(a) should not be viewed as limiting § 7(a) to persons who take affirmative acts. The Restatement (Third) itself explains that it employs a "convention" of "referring to the person whose actions or conduct may be subject to tort liability as the 'actor'[,]" even when "the actor may not have engaged in any action or conduct relevant to the harm that occurred." Restatement (Third) of Torts: Liability for Physical Harm at 709 (Proposed Final Draft No. 1, 2005).

[42] Restatement (Third) of Torts: Liability for Physical Harm § 37 cmt. c, at 711 (Proposed Final Draft No. 1, 2005).

may be subject to (and may breach) the general duty to exercise reasonable and ordinary care in his or her omissions as well as acts.

¶ 84. The same comment provides specific examples of cases in which a defendant's alleged negligence may be viewed as an omission yet the defendant's conduct must be analyzed in terms of whether the defendant exercised reasonable and ordinary care under § 7(a). The comment states that "a failure to employ an automobile's brakes or a failure to warn about a latent danger in one's product is not a case of nonfeasance governed by the rules [in §§ 38–44 relating to specific affirmative duties to act], because in those cases the entirety of the actor's conduct (driving an automobile or selling a product) created a risk of harm. This is so even though the specific conduct alleged to be a *breach* of the duty of reasonable care was itself an omission."[43]

¶ 85. My point here is not that Wisconsin's law of negligence is consistent in all respects with the Restatement (Third). It is not.[44] My point is rather that the Restatement (Third)'s approach does not turn on

---

[43] *Id.*

[44] The Reporters' Note to § 37 of the Restatement (Third), cites the *Rockweit* decision for the proposition that Wisconsin "does not employ no-duty rules [but] nevertheless reaches the same result by employing public policy to avoid liability for those whose acts played *no role in creating risk* to another." Restatement (Third) of Torts: Liability for Physical Harm § 37, at 719 (Reporters' Note) (Proposed Final Draft No. 1, 2005).

This court does not in the present case adopt any provisions of the Restatement (Third) of Torts: Liability for Physical Harm (Proposed Final Draft No. 1, 2005). The majority opinion explains that this court has "previously noted, without finding it necessary to adopt, helpful language from sections in the

whether the defendant engaged in an act or omission. The Restatement (Third) instead recognizes that whenever the entire course of a person's conduct has created a risk of physical harm, the person is negligent if—by act or omission alike—the person fails to exercise reasonable and ordinary care.

¶ 86. Justice Roggensack's concurrence, distinguishing between an act and an omission, is ostensibly offered "to assist the readers of [this court's] opinions as they step into the thicket of a negligence claim in Wisconsin[.]"[45] From my vantage point the concurrence unfortunately makes the thicket thicker.

¶ 87. For the reasons set forth, I write separately.

¶ 88. PATIENCE DRAKE ROGGENSACK, J. (concurring). I concur in the result reached by the majority opinion in regard to both claims made. I write only with regard to the negligence claim in order to point out the difficulty in assessing duty, and the scope of duty, under our negligence jurisprudence. Some of the difficulty is caused in part by our failing to be precise in our reasoning when a claim of negligence arises from an allegation of a failure to act, as distinguished from a claim asserting that the act in question was negligently performed. This difficulty is enhanced when the claim made could be characterized as either a failure to act or as an act negligently performed, depending on the lens that the author of the opinion applies. And some of the difficulty occurs because our jurisprudence in this area continues to develop. Because the majority opinion does not address duty, and because I hope to assist the readers of our opinions as they step into the thicket of

Restatements where it provides further support for the rationale for a holding." Majority op., ¶ 19 n.7.

[45] Justice Roggensack's concurrence, ¶ 88.

a negligence claim in Wisconsin, I write separately and respectfully concur in the majority opinion.

## I. BACKGROUND

¶ 89. The context in which this negligence claim arose is carefully and correctly narrated in the majority opinion.[1] Summarily stated, Kenneth J. Behrendt (Behrendt) alleges that Silvan Industries, Inc. (Silvan) was causally negligent for the injuries he sustained when a tank that he alleged had been manufactured at Silvan ten years earlier exploded. The tank was manufactured by Silvan employees as a "side job," i.e., a personal job, for the employees' personal use. At the time of its manufacture, Silvan had a policy that side jobs were permitted, but employees were not permitted to manufacture pressure vessels. In compliance with that policy, the tank that was manufactured at Silvan had holes cut in it before it left Silvan and was unusable as a pressure vessel at that time.

¶ 90. At some later date, the holes in the tank were plugged by a third party who was unaffiliated with Silvan, and a fixture was added so that the tank could be subjected to air pressurization. It was while the tank was pressurized that it exploded, injuring Behrendt.

¶ 91. Behrendt claimed that Silvan was negligent in "distributing" the tank; "in failing to issue proper and adequate warnings and instructions concerning the use" of the tank; and "in the manner in which it designed, manufactured [and] assembled" the tank.[2] In his brief, Behrendt argues more generally, alleging that Silvan was negligent because it permitted side jobs where defective or dangerous items could be made.

---

[1] Majority op., ¶¶ 5–7.

[2] Amended Complaint, ¶ 20.

¶ 92. The court of appeals affirmed the dismissal of Behrendt's negligence claim against Silvan. The court concluded that Silvan had no duty to Behrendt because his injuries, which arose from modification of the tank, were not foreseeable by Silvan.[3] The majority opinion affirms the dismissal of the negligence claim because it concludes that Silvan's duty of ordinary care under the circumstances, with regard to its policy of permitting side jobs, was not breached.[4] The majority opinion does not opine on the scope of Silvan's duty under the circumstances presented.

## II. DISCUSSION

A. Standard of Review

¶ 93. Because the facts relating to the manufacture of the tank are undisputed, whether Silvan had a duty and the scope of that duty are questions of law, which we decide independently. *Rolph v. EBI Cos.,* 159 Wis. 2d 518, 528, 464 N.W.2d 667 (1991) (citing *Fitzgerald v. Ludwig,* 41 Wis. 2d 635, 639, 165 N.W.2d 158 (1969)).

B. General Principles

¶ 94. A plaintiff seeking to recover on a claim of negligence must prove four elements: "(1) the existence of a duty of care on the part of the defendant, (2) a breach of that duty of care, (3) a causal connection between the defendant's breach of the duty of care and the plaintiff's injury, and (4) actual loss or damage

---

[3] *Behrendt v. Gulf Underwriters Ins. Co.,* No. 2006AP2910, unpublished slip op., ¶ 5 (Wis. Ct. App. Feb. 26, 2008).

[4] Majority op., ¶ 4.

resulting from the injury." *Gritzner v. Michael R.,* 2000 WI 68, ¶ 19, 235 Wis. 2d 781, 611 N.W.2d 906 (citing *Miller v. Wal-Mart Stores, Inc.,* 219 Wis. 2d 250, 260, 580 N.W.2d 233 (1998); *Rockweit v. Senecal,* 197 Wis. 2d 409, 419, 541 N.W.2d 742 (1995)[5] (citing *Coffey v. City of Milwaukee,* 74 Wis. 2d 526, 531, 247 N.W.2d 132 (1976))).

¶ 95. In analyzing any negligence claim, it is necessary to remember that "[d]uty is still an important factor in determining whether *an act* is negligent." *A.E. Inv. Corp. v. Link Builders, Inc.,* 62 Wis. 2d 479, 484, 214 N.W.2d 764 (1974) (emphasis added). The concept that duty remains an element of a negligence claim is in danger of being obscured when we oversimplify duty, based on the assertion that this court has adopted the minority view in *Palsgraf v. Long Island R. Co.,* 162 N.E. 99 (N.Y. 1928). *See, e.g., Hoida, Inc. v. M&I Midstate Bank,* 2006 WI 69, ¶ 64, 291 Wis. 2d 283, 717 N.W.2d 17 (Bradley, J., dissenting).

¶ 96. Our adoption of the minority view in *Palsgraf* sometimes applies under the facts presented and

---

[5] *Rockweit v. Senecal,* 197 Wis. 2d 409, 541 N.W.2d 742 (1995), contains no majority opinion in regard to proof of the elements of Rockweit's negligence claim. The majority opinion, written by Justice Wilcox, joined by Justices Bablitch and Geske, concluded that there was a duty, but it did not affirm the jury finding of causation. *Id.* at 424–25. Instead, the majority opinion assumed causation and precluded liability based on public policy. *Id.* Then Justice Abrahamson's concurrence, joined by Justice Bradley, "address[ed] the defendant's claim that 'Wisconsin law does not impose a duty upon one person to actively assist or preserve a person from a risk of injury created by another.' " *Id.* at 429. Justice Steinmetz's concurrence, joined by then Chief Justice Day, agreed with the majority opinion's public policy analysis, but also concluded there had been no breach. *Id.* at 433.

sometimes it is a red herring that clouds the negligence analysis. In this regard, it is helpful to examine what the dissent in *Palsgraf did not* conclude, as well as what it *did* conclude. First, the minority view in *Palsgraf did not* eliminate the element of duty from a negligence claim. As Chief Justice Heffernan explained while asserting that the court had "expressly adopted the *Palsgraf* minority rationale," we examine duty when we are determining whether an act is negligent. *A.E. Inv.*, 62 Wis. 2d at 483–84. It is only *after* "an act has been found to be negligent, [that] we no longer look to see if there was a duty to the one who was in fact injured." *Id.* at 484 (quoting *Schilling v. Stockel*, 26 Wis. 2d 525, 531, 133 N.W.2d 335 (1965)). Second, the dissent in *Palsgraf did* address the flow of the duty of ordinary care to others when a negligent act occurred. *Palsgraf,* 162 N.E. at 102 (Andrews, J., dissenting).

¶ 97. The minority rationale of *Palsgraf* never concludes or implies that duty is no longer an element of a negligence claim. To explain: *Palsgraf* arose from an affirmative act that was negligently performed, from which negligence Palsgraf claimed injury. In *Palsgraf,* two men were attempting to board a train that was in motion. *Id.* at 99. An employee of the railroad pushed one of the men from behind in order to assist him onto the train, and in so doing he caused the man to drop the package he was carrying. *Id.* The package fell onto the rails and exploded. *Id.* The shock of the explosion caused the scales on the railway platform to fall and to strike Palsgraf. *Id.*

¶ 98. Palsgraf sued, and the dissenting opinion in that New York case took issue with the denial of her claim. *Id.* at 102 (Andrews, J., dissenting). The dissent set the issue consistent with the description of duty in *A.E. Investment* when it said:

670

The result we shall reach depends upon our theory as to the nature of negligence. Is it a relative concept—the breach of some duty owing to a particular person or to particular persons? Or, where there is an act which unreasonably threatens the safety of others, is the doer liable for all its proximate consequences, even where they result in injury to one who would generally be thought to be outside the radius of danger?

*Id.* The focus of *Palsgraf*'s dissent, as quoted above, and the focus of this court's use of *Palsgraf,* as explained in *A.E. Investment,* is on the range of persons to whom a negligent actor may be liable, after a negligent act has been found. *A.E. Inv.,* 62 Wis. 2d at 484 (concluding that "[o]nce negligence is established, the defendant is liable for unforeseeable consequences as well as foreseeable ones[, and] he is liable to unforeseeable plaintiffs").

¶ 99. The *Palsgraf* decision arose from an affirmative act negligently undertaken and the question presented was whether Palsgraf's damages were "so connected with the negligence that the latter may be said to be the proximate cause of the former." *Palsgraf,* 162 N.E. at 103 (Andrews, J., dissenting). Stated otherwise, *Palsgraf*'s dissent parsed to whom liability flows from a negligent act affirmatively undertaken. One could characterize the *Palsgraf* dissent's position as to whom a duty of ordinary care was owed when the negligent act occurred.

¶ 100. *Hoida,* by contrast with *Palsgraf,* turned on whether the lender's failure to take certain actions was negligent by omission. *Hoida,* 291 Wis. 2d 283, ¶ 17. Therefore, *Hoida* addressed whether the first element of a negligence claim, duty, had been alleged. Stated otherwise, the question presented was whether M&I's duty of ordinary care under the circumstances

671

required M&I to take the actions that Hoida claimed M&I had a duty to undertake. *Id.* In *Palsgraf,* there was no question that the railroad employee acted and that his act of pushing the passenger onto the moving train was negligent. *Palsgraf,* 162 N.E. at 105 (Andrews, J., dissenting). The minority view in *Palsgraf* was concerned with how far liability for the negligent act flowed, not with whether there was negligence. *Id.* at 103.

¶ 101. While examining what acts the bank in *Hoida* was required to take, we explained that "one has a duty to exercise ordinary care under the circumstances." *Hoida,* 291 Wis. 2d 283, ¶ 30 (citing *Gritzner,* 235 Wis. 2d 781, ¶ 20). We noted that what acts are required when one exercises ordinary care will depend upon the circumstances under which the claimed duty to act arises. *Id.,* ¶ 32 (citing *Hatleberg v. Norwest Bank Wis.,* 2005 WI 109, ¶¶ 18–20, 283 Wis. 2d 234, 700 N.W.2d 15).

¶ 102. In *Hatleberg,* we also examined what acts a bank was required to take pursuant to its duty to exercise ordinary care under the circumstances. *Hatleberg,* 283 Wis. 2d 234, ¶ 3. We concluded that the bank was not negligent because it had no duty under the circumstances to review the trust document to ensure that it would effectively avoid taxes. *Id. Hatleberg,* like *Hoida,* involved an element of the claim of negligence, duty, which element was based on an alleged failure to act. *Hatleberg* did not involve an affirmative act that was negligently performed, as *Palsgraf* did.

¶ 103. In *Baumeister v. Heritage Mutual Insurance Co.,* 2004 WI 148, 277 Wis. 2d 21, 690 N.W.2d 1, we examined whether certain acts were required in order to satisfy an architect's duty of ordinary care under the circumstances when the claim of negligence was based

on a failure to act. *Id.*, ¶ 18. *Baumeister*'s conclusion turned on whether the architect's duty of ordinary care under the circumstances required him to take certain actions. *Id.* In so doing, *Baumeister* examined the duty element of a negligence claim. *Id.* It did not examine a negligently performed act and determine whether liability to Baumeister should flow from that act, as the dissent in *Palsgraf* did. *Id.*

¶ 104. We do not always address duty when a negligence claim is under review. For example, on numerous occasions we have chosen to assume that all four elements of a negligence claim are present, but nevertheless have precluded liability based on public policy factors. *Nichols v. Progressive N. Ins. Co.,* 2008 WI 20, ¶¶ 3, 19, 308 Wis. 2d 17, 746 N.W.2d 220 (concluding that even if the court assumed that the Niesens had a duty to supervise the juveniles on their property, the Nichols' claim was denied on public policy grounds); *Smaxwell v. Bayard,* 2004 WI 101, ¶ 39, 274 Wis. 2d 278, 682 N.W.2d 923 (concluding that on public policy grounds common law negligence claims against a landlord or a landowner based on injury caused by a dog are limited to situations where the landlord or landowner is also the owner or keeper of the dog). However, a preclusion of liability is not a preclusion of negligence because "negligence and liability are distinct concepts." *Nichols,* 308 Wis. 2d 17, ¶ 19 (citing *Hoida,* 291 Wis. 2d 283, ¶ 25).

¶ 105. To summarize, when the negligence claim is based on a failure to act, the claim is, in the first instance, focused on whether the omission was negligent. Stated otherwise, the focus in a failure to act case is, at least initially, on examining the duty element of a negligence claim to determine the scope of that alleged

duty under the circumstances. *Hoida,* 291 Wis. 2d 283, ¶ 32; *Hatleberg,* 283 Wis. 2d 234, ¶ 3; *Baumeister,* 277 Wis. 2d 21, ¶ 18.

¶ 106. If it is determined that the duty of ordinary care under the circumstances presented did not include taking the action which was omitted, that is the end of the analysis because one of the elements of negligence will not have been proven. *Gritzner,* 235 Wis. 2d 781, ¶ 19; *A.E. Inv.,* 62 Wis. 2d at 484. Therefore, the initial determinations in failure to act cases do not come within the rubric of *Palsgraf*'s dissent, where a negligent act had already occurred and the dissent parsed the effect of that negligent act on Palsgraf's claim of damages. *Palsgraf,* 162 N.E. at 105 (Andrews, J., dissenting).

¶ 107. Stated otherwise, what *Palsgraf* provided, and what this court has adopted, is that when a negligent act has occurred, the actor generally is liable to all who are injured by it. In evaluating that liability, we do not consider whether the actor had an individualized duty to each injured person. *Palsgraf,* 162 N.E. at 103.

¶ 108. A careful reading of the above cases, and many others that arise in the context of common law negligence, shows that the term "duty" has been used in two ways: (1) identifying duty as an element of a common law negligence claim and (2) identifying duty by describing an obligation to an injured person. When the negligence claim is based on a failure to act, the initial focus will be on the first use of duty. *Hoida,* 291 Wis. 2d 283, ¶ 51. When the negligence claim arises from an affirmative act claimed to be negligently undertaken, the second use of duty may be the central focus of our analysis. *Pfeifer v. Standard Gateway Theater, Inc.,* 262 Wis. 229, 235–36, 55 N.W.2d 29 (1952)

(concluding that in Wisconsin a negligent actor's liability is not limited to the probable consequences of his act). However, our opinions have not always been precise in our descriptions of duty and the scope of duty under the circumstances presented, thereby causing some confusion for the reader.[6]

¶ 109. Chief Justice Abrahamson takes the unusual tact of attacking a concurring opinion in her ongoing mission of attempting to eliminate the element of duty from common law negligence claims in Wisconsin.[7] In so doing, she only strengthens the black letter law that a negligence claim in Wisconsin has duty as an element. *Nichols,* 308 Wis. 2d 17, ¶ 11; *Hoida,* 291 Wis. 2d 283, ¶ 17; *Gritzner,* 235 Wis. 2d 781, ¶ 19; *Rockweit,* 197 Wis. 2d at 418.

¶ 110. Contrary to the lament of Chief Justice Abrahamson, *Rockweit* and *Nichols* are consistent with my discussion above. *Rockweit* examined whether a duty existed, and explained that "[a]lthough individuals generally owe a duty of ordinary care to all persons, we

---

[6] The discussion of duty is rarely simple. For example, it can be affected by the relationship between the alleged tortfeasor and the party claiming injury. *See, e.g., Gritzner v. Michael R.,* 2000 WI 68, ¶¶ 52–56, 235 Wis. 2d 781, 611 N.W.2d 906 (concluding that Bubner had a duty to take affirmative acts to protect the child because he stood in loco parentis with regard to the injured child and because he voluntarily undertook a duty to protect her). Or, duty may be affected by the law underlying the obligation that is claimed to have been breached. *See, e.g., Beloit Liquidating Trust v. Grade,* 2004 WI 39, ¶ 2, 270 Wis. 2d 356, 677 N.W.2d 298 (concluding that in the context of a claimed breach of fiduciary duty, an intentional tort, corporation officers and directors owed only the duty of ordinary care to corporate creditors unless the corporation was both insolvent and no longer a going concern).

[7] Chief Justice Abrahamson's concurrence, ¶¶ 50–53.

recognize that limitations do exist with respect to the imposition of a legal duty in some cases." *Rockweit,* 197 Wis. 2d at 421. In *Nichols,* we affirmed that in Wisconsin liability has been precluded under a negligence theory of recovery "based on the absence of a duty," although we have more frequently limited liability based on public policy concerns. *Nichols,* 308 Wis. 2d 17, ¶ 47.

¶ 111. *Brown v. Dibbell,* 227 Wis. 2d 28, 595 N.W.2d 358 (1999), is interesting to compare with Chief Justice Abrahamson's concurrence herein because she authored *Brown. Brown* arose in an informed consent context. *Id.* at 33. The physician, who Brown contended had provided insufficient information, defended in part by asserting that Brown, as the patient, had a duty to ascertain the completeness of the information the physician provided. *Id.* at 47. The court found no such duty existed. "A patient's duty to exercise ordinary care generally does not encompass a duty to ascertain the truth or the completeness of the information presented by a doctor." *Id.* at 51. The reasoning in *Brown* is similar to my conclusion that when a claim is based on a failure to act, we begin by examining whether there was a duty to undertake the acts that were alleged to have been wrongfully omitted. Duty remains a highly nuanced element of negligence; it has not been gobbled up by the dissenting opinion in *Palsgraf.*

### C. Behrendt's Negligence Claim

¶ 112. The negligence claim Behrendt pled can be viewed as being based both on an affirmative act negligently undertaken and on a failure to act. For example, Behrendt alleged that Silvan was negligent in the manner in which the tank was manufactured and in

failing to issue proper warnings and instructions.[8] Presumably, the claim of negligent manufacturing arises from the allegation that the tank was manufactured as a side job under Silvan's policy that permitted side jobs. This contention is based on the implicit allegation that Silvan's creation of a policy that permitted side jobs was an affirmative act negligently undertaken.

¶ 113. The majority opinion focuses on the allegation that the tank was negligently manufactured because of Silvan's policy that permitted side jobs.[9] Therefore, the majority opinion is analyzing an affirmative act, i.e., the creation of the policy permitting side jobs.

¶ 114. That the majority opinion's focus is on an affirmative act is shown by its decision to employ Section 7 of the Third Restatement of Torts as the framework for much of its discussion.[10] Section 7 of that Restatement addresses the element of duty for negligence claims. It provides: "An actor ordinarily has a duty to exercise reasonable care when the actor's conduct creates a risk of physical harm." Restatement (Third) of Torts: Liability for Physical Harm § 7(a)

---

[8] Amended Complaint, ¶ 20. Behrendt does not continue his failure to warn allegation before us. Perhaps Behrendt has dropped this allegation because the tank could not have been used as a pressure vessel when it left Silvan. *See Schreiner v. Wieser Concrete Prods., Inc.,* 2006 WI App 138, ¶ 15, 294 Wis. 2d 832, 720 N.W.2d 525 (concluding that the plastic sheeting was not defective, thereby requiring no warning, even though it may have been used in an improper way). However, regardless of the reason, I do not address this claim because Behrendt did not brief or argue it to us. *Truttschel v. Martin,* 208 Wis. 2d 361, 369, 560 N.W.2d 315 (Ct. App. 1997).

[9] Majority op., ¶ 24.

[10] *Id.,* ¶¶ 19–20, 26.

677

(Proposed Final Draft No. 1, 2005). Section 7's discussion of duty is limited to affirmative acts; it does not address the element of duty based on an alleged failure to act. As the Restatement explains:

> Relationship with affirmative duties to act. The general duty rule contained in this Section is conditioned on the actor's having engaged in conduct that creates a risk of physical harm. Section 37[11] states the obverse of this rule: In the absence of conduct creating a risk of harm to others, an actor ordinarily has no duty of care to another.

Restatement (Third) of Torts § 7 cmt. 1 (Proposed Final Draft No. 1, 2005). Accordingly, because of the manner in which the majority opinion has shaped its discussion, I conclude that it presumes an affirmative act based on Silvan's policy of permitting side jobs.

¶ 115. It is important for the reader to be aware of whether the claim analyzed is one of an affirmative act negligently undertaken or an alleged failure to act, in order to fully understand the decision. Here, it is an affirmative act, the creation of Silvan's policy permitting side jobs, that was alleged to be negligently undertaken. Behrendt has not presented to us a negligence claim based on an alleged failure to act.

---

[11] Restatement (Third) of Torts: Liability for Physical Harm § 37 (Proposed Final Draft No. 1, 2005) provides: "An actor whose conduct has not created a risk of physical harm to another has no duty of care to the other unless a court determines that one of the affirmative duties provided in §§ 38–44 is applicable." See § 38 (duty imposed by statute); § 39 (duty based on prior conduct); § 40 (duty due to special relationship with the victim); § 41 (duty due to special relationship with persons posing risks of harm to others); §§ 42–43 (duty due to voluntary undertakings).

¶ 116. Even though the majority opinion employs § 7's discussion of duty as a framework, it focuses its discussion of liability on the second element of a negligence claim, breach.[12] It concludes that Silvan was not negligent because it did not breach its duty of ordinary care under the circumstance.[13]

¶ 117. With regard to Silvan's creation of its side job policy, I agree that Silvan did not breach its duty of ordinary care under the circumstances. Silvan acted affirmatively when it created the side job policy. Accordingly, Silvan's policy must have evidenced the exercise of reasonable care, *Johnson v. Seipel,* 152 Wis. 2d 636, 644, 449 N.W.2d 66 (Ct. App. 1989), which we have also characterized as ordinary care under the circumstances, *Totsky v. Riteway Bus Service, Inc.,* 2000 WI 29, ¶ 57, 233 Wis. 2d 371, 607 N.W.2d 637.

¶ 118. It is undisputed that Silvan's policy precluded the manufacturing of pressure vessels as side jobs. I conclude that the policy forbidding the manufacture of pressure vessels was reasonable, and Behrendt does not contend that Silvan's preclusion of the manufacturing of pressure vessels as a side job was unreasonable or that it violated Silvan's duty of ordinary care under the circumstances. Furthermore, Silvan's policy was followed on this side job because holes were cut into the tank so that it could not have been used as a pressure vessel when it left Silvan's control. Therefore, Silvan did not breach its duty to exercise ordinary care under the circumstances.

¶ 119. Furthermore, the tank that left Silvan did not cause Behrendt's injuries. It was the actions of third parties unaffiliated with Silvan that created the tank to

---

[12] Majority op., ¶ 43.
[13] *Id.*

which air pressure could be applied, which tank caused Behrendt's injuries.

## III. CONCLUSION

¶ 120. In conclusion, the negligence claim that was argued to us is based on the allegation of an affirmative act negligently undertaken. It is not based on an alleged failure to act. Therefore, the majority's analysis relying on the determination of breach, rather than duty, is appropriate in this instance.

¶ 121. Accordingly, I respectfully concur in the majority opinion.

¶ 122. I am authorized to state that Justices AN-NETTE KINGSLAND ZIEGLER and MICHAEL J. GABLEMAN join this concurrence.