STATE of Wisconsin, Plaintiff-Respondent-Petitioner,

v.

QUALITY EGG FARM, INC., Defendant-Appellant.†

Supreme Court

*No. 80–938. Argued October 5, 1981.—Decided November 3, 1981.*

(Also reported in 311 N.W.2d 650.)

† Motion for reconsideration denied, without costs, on December 29, 1981.

For the petitioner the cause was argued by *Maryann Sumi,* assistant attorney general, with whom on the briefs was *Bronson C. La Follette,* attorney general.

For the defendant-appellant there was a brief by *Milton C. Konicek, Konicek Law Offices, S.C.*, of Burlington, and oral argument by *Mr. Konicek.*

STEINMETZ, J.   The issues in this case are the definition in the state of Wisconsin of a public nuisance and whether the evidence in this case sustained the trial court's conclusion of a public nuisance which allowed the state of Wisconsin as a proper party to bring the complaint.

The court of appeals reversed and found as a matter of law that there was no public nuisance established and, therefore, the attorney general's office was not empowered to seek the abatement of defendant's (Quality Egg Farm, Inc.) operation.  We reverse the court of appeals and remand to the trial court for findings consistent with the evidence as determined by that court consistent with this opinion.

In 1967, the Quality Egg Farm, Inc., commenced operation of its egg farm in Bristol, Wisconsin.  At that time, both Dr. John Skinner, a professor of agricultural sciences at the University of Wisconsin, and the county agricultural agent had recommended against starting operation in this location, due to the close proximity of the egg farm operations to neighboring homes and a grade school.  Despite these recommendations and the egg farm owner's own reservations about the location, the Quality Egg Farm commenced operations, starting with 60,000 chickens and increasing that number to 140,000 by 1974, with plans to increase to 300,000 chickens in the future.

The Quality Egg Farm houses its chickens in seven houses with approximately 20,000 chickens per house.  The operation produces 15 tons of chicken manure per day.  There was testimony that the operation causes the emission of chicken manure odors and chicken body

odors, and flies are a constant problem. Dr. Skinner described the source of the odors as follows:

"[I]t was a combination of the manure odors and the normal body odors of the chickens, in this concentration, being forced on the community by the fans that ventilate the birds, and by the agitation of the manure in removing it from the house and depositing it on the land."

There was testimony describing the odor as "nauseating," "pungent," "unbearable," and that it made one sick or ill or gave one a headache.

Manure is removed from the houses and spread on the ground surface of the egg farm, even when the ground is frozen and unworkable.

Over two-thirds of the people available at trial to testify for the state lived in the vicinity of the egg farm at least five years before the egg farm moved into the area. The majority of the people in the area are farmers or are from farm backgrounds.

Two years before this action was commenced (February and March, 1976) the department of natural resources investigated complaints of odors emanating from the farm. A public hearing was held in Bristol to determine whether a proposed order to abate malodorous emissions should issue. The proposed order was rescinded by the hearing examiner on March 22, 1977. No further action was taken with respect to that proceeding.

The department of justice has independent jurisdiction under sec. 832.02, Stats.,[1] to seek abatement of public

[1] "823.02 **Injunction against public nuisance, time extension.** An action to enjoin a public nuisance may be commenced and prosecuted in the name of the state, either by the attorney general on information obtained by the department of justice, or upon the relation of a private individual, sewerage commission created under ss. 66.20 to 66.26 or a county, having first obtained leave therefor from the court. An action to enjoin a public nuisance may be commenced and prosecuted by a city, village, town or a sewerage commission of a city of the 1st class and a metropolitan

nuisances. *State v. Dairyland Power Cooperative*, 52 Wis. 2d 45, 54, 187 N.W.2d 878 (1971), held the doctrine of exhaustion of administrative remedies does not apply to a public nuisance action of this kind.

This action for abatement of a public nuisance was commenced by the state of Wisconsin by summons and complaint filed April 12, 1978, in Kenosha county circuit court against the Quality Egg Farm, Inc. Pursuant to sec. 823.02, Stats., the state sought abatement of the emission of chicken and chicken manure odors caused by the operation of defendant's egg industry in the town of Bristol, Kenosha county.

On May 17, 1978, the Kenosha county circuit court, the Honorable Michael S. Fisher, granted the state's motion for preliminary injunction finding that:

"[L]andowners in the vicinity are entitled to the reasonable use and enjoyment of their property, that the situation which presently exists has curtailed these rights, that the granting of a preliminary injunction will not prohibit the defendant from continuing its operations until a full hearing on the merits can be held."

The court issued orders with the preliminary injunction to the Quality Egg Farm, Inc., to properly dispose of the chicken manure and to conduct its operations in a sanitary and nuisance-free manner.

Less than two months later, the state petitioned the court for contempt of the May 17 order. An evidentiary

sewerage commission created under s. 59.96 in the name of the municipality or metropolitan sewerage district, and it is not necessary to obtain leave from the court to commence or prosecute the action. The same rule as to liability for costs shall govern as in other actions brought by the state. No stay of any order or judgment enjoining or abating, in any action under this section, may be had unless the appeal is taken within 5 days after notice of entry of the judgment or order or service of the injunction. Upon appeal and stay, the return to the court of appeals or supreme court shall be made immediately."

hearing was held on July 28, 1978, and a trial to the court on November 16 and 17, 1978. On February 27, 1979, the circuit court issued its decision granting the defendant nine months to eliminate all objectionable odors emanating from the chicken farm and to materially reduce the fly problem. A referee, Professor Richard W. Miller of the Carthage College Geography Department, was appointed by the court to monitor the situation.

A final hearing was held on April 16, 1980, to receive the report of the referee.

On May 2, 1980, the court issued its final decision finding *inter alia* that:

"[D]ue to the poor location of the Egg Farm in relationship to the closeness of its residential neighbors, the great number of birds and the great amount of manure they produce, there will never be a solution to the problem. While the odors have been somewhat lessened, they are still present and the fly problem remains. It is highly doubtful that these problems can ever be overcome."

The court also in the decision stated:

"The Court is satisfied that in the fact situation before the Court the interference created by the Egg Farm is both substantial and unreasonable in that it has for many years prevented the neighbors from the normal use and enjoyment of their property and has had some effect on their health.
". . .
"The odors complained of and fly problem were established by clear and convincing proof to be more than a minor visitation. It was shown that the nuisance was substantial and unreasonable and did affect the normal use and enjoyment of the complainants' life, health and property. . . . Under the circumstances the Court does not believe the nuisance has been, nor can it be, abated. . . . Therefore, the Court finds no alternative but to order a permanent injunction."

In the May 2, 1980, decision the trial court made no statement whether the egg farm was found by him to be a *public* nuisance.

A reference by the trial court to the nuisance being public was in the March 30, 1979, interlocutory judgment "for injunctive relief to abate public nuisance caused by the operation of the Quality Egg Farm." Accordingly, the judge ordered the egg farm operators to take corrective actions and appointed the referee. The decision of the trial court leading to the interlocutory judgment applied the evidence of the case to hold the operation of the egg farm was a nuisance. The only commentary regarding public nuisance was:

"This Court sees good reason for the neighbors to complain and for one party, in this case the State of Wisconsin, to act on behalf of the *neighbors* as a single spokesman." (Emphasis added.)

And:

"Under the conditions as they now exist, the evidence clearly shows an interference with the use and enjoyment of the land of the surrounding residential neighbors. This interference is substantial and unreasonable."

In findings and conclusions dated March 30, 1979, in conclusions of law, the trial court held:

"4. The operation of the Quality Egg Farm constitutes a public nuisance, entitling the plaintiff to injunctive relief abating the public nuisance caused by the egg farm.

"5. The injury caused due to the operation of the Quality Egg Farm as a public nuisance is not permanent, but there exists a potential for permanent injury.

". . .

"IT IS HEREBY ORDERED that judgment be entered in favor of the plaintiff, State of Wisconsin, and against the defendant, Quality Egg Farm, Inc., for injunctive relief to abate the public nuisance caused by operation of the Quality Egg Farm, Inc. . . ."

In the May 2, 1980, decision, the operation of the farm is referred to as creating a nuisance as found in the decision of February 27, 1979, and that the interference created by the egg farm "is both substantial and unreasonable in that it has for many years prevented the neighbors from the normal use and enjoyment of their property and has had some effect on their health."

Quality Egg Farm appealed the May 2, 1980, decision and order of the circuit court to the court of appeals. The court of appeals reversed the trial court, and the state of Wisconsin sought review by this court.

The court of appeals in reversing the trial court found the evidence failed to support a finding of *public nuisance* and, therefore, the state of Wisconsin, plaintiff, was not entitled to any relief pursuant to sec. 823.02, Stats. The court held that the proof was the citizens affected by the operation of the egg farm were affected only as to their private interests, but they were not parties seeking private relief.

The court of appeals discussed, in an unpublished opinion, the dichotomy between the definition of public nuisance in Wisconsin and what that court referred to as the majority rule. It cited 58 Am. Jur. 2d *Nuisances* sec. 10 (1971) at 565 for the majority rule as follows:

"The difference between a public and private nuisance is that a public nuisance affects the public at large whereas a private nuisance affects an individual or a limited number of individuals only."

The court of appeals went on to state:

"It is the general rule that a finding of a public nuisance cannot be based solely upon the fact that the nuisance affects a number of persons. Generally, in order for a nuisance to be classified as a public nuisance, the nuisance must interfere [with] or affect a public right or interest."

The court of appeals also stated how Wisconsin's law of public nuisance differs from the general rule as follows:

"In this state, the evolution of the common law has resulted in a definition of public nuisance based on the scope of the injury rather than the type or nature of the injury. *State v. Michels Pipeline Construction, Inc.*, 63 Wis. 2d 278, 286, 217 N.W.2d 339, 219 N.W.2d 308 (1974). In Wisconsin, when determining whether a nuisance is public or private, one looks to the number of persons injured and the degree to which they are affected. One does not look to the nature of the interest concerned. The reason or rationale behind the dichotomy between the Wisconsin and majority rules is not apparent from a reading of the case law. It is clear, however, that under the majority rule for a public nuisance to exist there must be an injury to a number of persons *and* a public interest whereas under the Wisconsin law a public nuisance exists whenever you have an injury to a number of persons *or* a public interest."

The distinction made by the court of appeals between the majority rule and Wisconsin's rule as to public nuisance was correct; however, it is then apparent the court of appeals applied to its review of this case the majority rule and not the Wisconsin rule. It held:

"In this case, the limited number of people affected cannot be classified . . . [as] an 'entire community,' *Schiro v. Oriental Realty Co., supra*, or a 'local neighborhood,' *Boden v. City of Milwaukee, supra*, [8 Wis. 2d 318, 99 N.W.2d 156 (1959)] a 'sufficiently large number of persons,' *State v. Michels Pipeline Construction, Inc., supra*, or a public interest."

The court then emphasized, however, that: "No testimony was offered to show that the public at large was affected."

The court of appeals then held that after reviewing the evidence most favorable to the State of Wisconsin,

it was insufficient to sustain the trial court's finding of public nuisance. *Chart v. General Motors Corp.*, 80 Wis. 2d 91, 110, 258 N.W.2d 680 (1977).

The court held that as a matter of law the trial court should have found this was not a public nuisance since it was obvious to the court of appeals that "a very small number of people were affected by the odors created by the egg farm." The court of appeals found: "The evidence presented by the State was limited to the single issue of how the odor affected the testifying individuals in their private lives." This was substituted judgment on the part of the court of appeals, and it was evidently influenced by that court's determination that no independently recognizable public interest was affected by the evidence in the record.

The court of appeals' difficulty was partly caused by its reluctance to apply Wisconsin's rule of public nuisance over the majority rule, but also the failure of the trial court to make findings leading to its conclusion that the egg farm operation was a *public* and not only a *private* nuisance. It made findings of nuisance from the evidence, but concluded its public nature without stating findings leading to that conclusion.

It is not only the number of people affected that determines whether the nuisance is public or private in Wisconsin, but also whether those persons constituted a local neighborhood or community or what the nature of the injury is as stated in *Costas v. Fond du Lac*, 24 Wis. 2d 409, 414, 129 N.W.2d 217 (1964) : "The test is not the number of persons injured but the character of the injury and of the right impinged upon." *See also, State v. H. Samuels Co.*, 60 Wis. 2d 631, 635, 211 N.W.2d 417 (1973).

In determining whether there is a public nuisance, the trial court must first consider the nature of the business

or use made of the property. The lawfulness of the business or property does not control, nor do the corrective measures applied by the owner or operator. These are matters to consider on the ultimate issue of lack of enjoyment of life and property due to the existence, location or activity of the business.

Material to the nature of the business or use of the property is its location. What may be a nuisance in one location may not be one elsewhere. This court has last quoted from *Euclid v. Ambler Co.*, 272 U.S. 365 (1926), in *Abdella v. Smith*, 34 Wis. 2d 393, 400, 149 N.W.2d 537 (1967):

> "' "A nuisance may be merely a right thing in the wrong place,—like a pig in the parlor instead of the barnyard." ' *Hutt v. Lamont's Service, Inc.* (1965), 27 Wis. 2d 177, 181, 133 N.W.2d 734."

Nevertheless:

> "[P]igs cannot be raised in the city, hence they must be raised on the farm. If they are raised there under conditions as clean and sanitary as can reasonably be attained considering the characteristics of the animal and the necessity for confinement in close quarters, the fact that odors from those quarters are carried abroad on the summer breeze will not make an actionable nuisance." *Clark v. Wambold*, 165 Wis. 70, 71–72, 160 N.W. 1039 (1917).

However, this court did state in *Milwaukee v. Milbrew, Inc.*, 240 Wis. 527, 533, 3 N.W.2d 386 (1942): " '[T]hose which in their nature are not nuisances but may become so by reason of their locality, surroundings or the manner in which they may be conducted or managed. . . .' " Citing *The People v. City of Chicago*, 260 Ill. 150, 152, 102 N.E. 1039 (1913).

Once the property, business or its use is defined, the trial court must determine whether it causes an obstruc-

tion to the free use of property by others. Does it interfere with the comfortable enjoyment of life and property by an entire community or neighborhood or any considerable number of persons? If the answer is "yes," it may be a public nuisance. *Acme Fertilizer Co. v. State,* 34 Ind. App. 346, 348–49, 72 N.E. 1037 (1905). That case stated the common law as applied to nuisances as: " '. . . "Whatever is injurious to health, or indecent, or offensive to the senses, or an obstruction to the free use of property, so as essentially to interfere with the comfortable enjoyment of life or property." . . .' "

In *Schiro v. Oriental Realty Co.,* 272 Wis. 537, 546, 76 N.W.2d 355 (1956), this court accepted a definition of nuisance as stated by Professor Warren A. Seavey in his article entitled *Nuisance: Contributory Negligence and Other Mysteries,* 65 Harv. L. Rev. 984 (1952) : "As commonly used, it connotes a condition or activity which unduly interferes with the use of land or of a public place."

In *Hunter v. McDonald,* 78 Wis. 2d 338, 344, 254 N.W. 2d 282 (1977), this court adopted a definition of nuisance from 66 C.J.S. *Nuisances* sec. 1 (1950) : "A nuisance is a wrong which may arise from the unreasonable or unlawful use by a person of his own property."

A nuisance is an unreasonable activity or use of property that interferes substantially with the comfortable enjoyment of life, health, safety of another or others.

If the trial court finds a nuisance present, it must then determine whether it is a private or public nuisance, depending on the parties in the action, the claim made and the remedies sought.

58 Am. Jur. 2d *Nuisances* sec. 7 (1971) defines a public nuisance as an injurious effect on the safety, health or morals of the public or use of property which :

"[W]orks some substantial annoyance, inconvenience, or injury to the public, and as a nuisance which causes hurt, inconvenience, or damage to the public generally,

or such part of the public as necessarily comes in contact with it in the exercise of a public or common right." *Id.* at 561.

At 58 Am. Jur. 2d *Nuisances* sec. 8 (1971) it is also indicated it may be a public nuisance, "if injury and annoyance are occasioned to such part of the public as come in contact with it. . . ." *Id.* at 563.

58 Am. Jur. 2d *Nuisances* sec. 10 (1971) continues:

"But it is admittedly a difficult question to tell whether a nuisance is so general in its character—that is, affects a sufficient number of persons—to justify its characterization as a 'public nuisance.' . . . No doubt a nuisance is public if it affects the entire community or neighborhood, or any considerable number of persons, or if it occurs in a public place or where the public frequently congregate or where numbers of the public are likely to come within the range of its influence. However, to make a nuisance a public one, it need not necessarily affect the government of the whole community or the state, nor need it in fact cause hurt, inconvenience, or injury to all the public, but it is public if it affects the surrounding community generally or the people of some local neighborhood. . . ." *Id.* at 565.

66 C.J.S. *Nuisances,* sec. 2 (1950) states: "A nuisance is 'common' or 'public,' the terms being synonymous, where it affects the rights enjoyed by citizens as part of the public, that is, the rights to which every citizen is entitled." At 730.

"It is the public annoyance, and not the number of people annoyed by it, that constitutes it a public nuisance." *Id.* at 732. That is the "nature" theory of public nuisance applied by some courts.

"[I]t is public if it affects the surrounding community generally, or the people of some local neighborhood. It is sufficient if it operates on such members of the public as are brought into contact with the conditions that constitute the nuisance." *Id.* at 732.

This is referred to as the "scope" test.

In *Milwaukee v. Milbrew, Inc., supra,* where the court considered the odor of dried yeast emanating from a plant, the court was construing an ordinance prohibiting offensive odors as public nuisances and found that dried yeast odor did not cause substantial physical injury to property or occupant. In the case, the court approved the following language in *Pennoyer v. Allen,* 56 Wis. 502, 510–11, 14 N.W. 609 (1883) :

"Of course the law is not so rigid as to make every business which imparts any degree of impurity to the atmosphere a nuisance. The law is practical as well as just. The maintenance of life and business, especially in crowded cities, necessitates the imparting of a certain degree of impurity to the atmosphere. The law gives protection only against substantial injury. To be of legal cognizance, the injury must be tangible, or the discomfort perceptible to the senses of ordinary people. Undoubtedly a party has the unlimited and unqualified right to use his property as he pleases, provided he does not so use it as to become a nuisance to others. . . . The question of nuisance, therefore, depends not only upon the character of the business maintained, but its proximity to the dwellings, business, property, or occupancy of others."

In the *Milbrew* case, *supra,* at 534, the court also held:

"Foul and offensive odors have long been recognized by the common law as constituting a public nuisance. 2 Wood, Nuisances, p 819, sec. 609; but this form of nuisance arising from the proper conduct of a lawful business must, as a general matter, be tested in respect to the location where the business is being conducted."

The *Milbrew* case, *supra,* at 534, held that the operation of the business must be proven by a preponderance of the evidence to be of such a nature as to deprive a normal person living in the neighborhood of the comforts of home so that it may be said the public welfare is invaded to be

held to be a public nuisance. There must be a substantial injury tangible or discomfort perceptible to the senses of ordinary people.

As we stated previously, *Costas v. Fond du Lac, supra,* at 414, held that the character of the injury and of the right impinged upon, and not the number of persons injured, is the proper test.

In *State v. H. Samuels Co., supra,* at 635, the court held:

"A public nuisance may be proved by a few witnesses. It is the extent and the nature of the acts and the resulting damage which are important, not the number of witnesses. . . ."

*Jost v. Dairyland Power Cooperative,* 45 Wis. 2d 164, 172 N.W.2d 647 (1969), in reviewing the theory of public nuisance in the context of a suit for damages, relied on *Pennoyer v. Allen, supra,* emphasized that the destruction of the plaintiffs' comfortable enjoyment of their homes furnished the ground for the action.

*State v. Michels Pipeline Construction, Inc., supra,* at 288, continued consistently to apply this court's definition of public nuisance as not requiring the general public involvement as follows: "The 'public' does not have to include all the persons of the community but only a sufficiently large number of persons, as alleged here."

Therefore, we reverse the court of appeals. The law in Wisconsin on public nuisance is not governed solely by the number of people affected. The number of people affected is only one of several criteria in Wisconsin's rule of public nuisance. Others referred to in this decision are the location of the operation or property; the degree or character of the injury inflicted or the right impinged upon; the reasonableness of the use of the property; the nature of the business maintained; the proximity of dwellings to the business; and the nature

of the surrounding neighborhood or community. It is for the trier of fact to apply the evidence received to the criteria to be considered in determining whether a public nuisance is present. That evidence, depending on the circumstances of the case, may prove one or all of the criteria or a combination of the criteria, but with varying degrees of severity in each.

The case is remanded to the trial court for findings based on the evidence which led that court to its conclusion that the operation of the egg farm was a *public* nuisance, and then whether the court still concludes there is a *public* nuisance to be abated.

The trial court may, as the judge believes it necessary, due to the injunctive relief granted, hear testimony and receive evidence regarding conditions relating to the defendant's operation subsequent to the last hearing of April 16, 1980.

*By the Court.*—The decision of the court of appeals is reversed and the cause is remanded for further proceedings consistent with this opinion.