COURT OF APPEALS
DECISION
DATED AND FILED

**January 13, 2022**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2021AP720**

**STATE OF WISCONSIN**

Cir. Ct. No. 2020CV193

**IN COURT OF APPEALS
DISTRICT IV**

JEANETTE PAUL,

   PLAINTIFF-APPELLANT,

WISCONSIN PHYSICIANS SERVICE INSURANCE
CORPORATION AND SECRETARY OF THE DEPARTMENT
OF HEALTH & HUMAN SERVICES,

   INVOLUNTARY PLAINTIFFS,

 V.

ACUITY, A MUTUAL INSURANCE COMPANY, CITY
OF WATERTOWN, AND LEAGUE OF WISCONSIN
MUNICIPALITIES MUTUAL INSURANCE,

   DEFENDANTS-RESPONDENTS.

APPEAL from an order of the circuit court for Dodge County: MARTIN J. DE VRIES, Judge. *Affirmed in part; reversed in part and cause remanded.*

Before Kloppenburg, Fitzpatrick, and Graham, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Jeannette Paul injured her ankle when she slipped on a patch of algae located on a public street in the City of Watertown. For purposes of summary judgment, it is undisputed that the algae growth was caused by sump pump discharge from the home of Paul's daughter, Angela Tuchalski. Paul filed suit against Tuchalski's insurer, Acuity, A Mutual Insurance Company,[1] and the City,[2] claiming that they are liable for negligence and for creating or maintaining a public nuisance. The circuit court entered an order granting summary judgment in favor of both defendants.

¶2 We conclude that Acuity is not entitled to summary judgment. In so doing, we reject Acuity's negligence-based argument that, because the City is responsible for "maintaining the public streets," Tuchalski did not have a duty of ordinary care with regard to any unsafe condition on the street that was caused by her sump pump discharge. We also reject Acuity's nuisance-based argument that the algae growth did not constitute a public nuisance as a matter of law. However, we conclude that Paul's claims against the City are barred by governmental immunity and, therefore, the City is entitled to summary judgment. Accordingly, we affirm the grant of summary judgment in favor of the City, reverse the grant of

---

[1] *See* WIS. STAT. § 632.24 (2019-20) (commonly referred to as the direct-action statute, which allows an injured person to file a direct action against the insurer of a potentially liable person or entity). All references to the Wisconsin Statutes are to the 2019-20 version.

[2] The City's insurer, League of Wisconsin Municipalities Mutual Insurance Company, was also named as a defendant. We refer to the City and its insurer collectively as "the City."

summary judgment in favor of Acuity, and remand to the circuit court for further proceedings.

## BACKGROUND

¶3  The following facts are undisputed for purposes of summary judgment. Tuchalski owns a house in Watertown and is insured by Acuity. The house is equipped with a sump pump, which discharges water through a hole cut in the curb in front of Tuchalski's home. The sump pump was installed by a prior owner, who apparently paid the City $35 to obtain a permit for the curb cut. By design, the sump pump ejects water through the curb cut and past the gutter, approximately five or six feet onto the public street.

¶4  The curb cut is not in close proximity to a storm drain and, as a result, water pools near the curb and in the street in front of Tuchalski's house. Tuchalski was aware that water pools in these areas, leading to algae growth, and she sometimes took steps to attempt to clear the area of standing water and algae. The City owns the street in front of Tuchalski's house and is charged by ordinance with maintaining public streets. *See* WATERTOWN, WIS., MUNICIPAL CODE § 174-2 (through March 2021).

¶5  Paul visited Tuchalski's family on June 9, 2019, parking her car on the same side of the street as Tuchalski's house. There is no sidewalk in front of Tuchalski's house. Paul approached the house on foot, walking on the street. As Paul attempted to reach the lawn by cutting between two parked cars, she slipped

on a patch of algae growing in the standing water on the street.[3] She suffered injuries, including a broken ankle.

¶6     Paul filed suit against Acuity and the City. She alleged that Tuchalski and the City were negligent and were also liable because the algae growth constituted a public nuisance.[4]

¶7     Acuity and the City both moved for summary judgment, submitting separate motions and briefs. The circuit court granted both motions, dismissing all claims. It determined that Tuchalski did not owe Paul a duty of care, and further, that the algae growth was not a public nuisance. In addition, the court concluded that the City was entitled to governmental immunity. Paul appeals.

## DISCUSSION

¶8     The purpose of summary judgment is to avoid trials when there is nothing to try. *Rollins Burdick Hunter of Wisconsin, Inc. v. Hamilton*, 101 Wis. 2d 460, 470, 304 N.W.2d 752 (1981). A party is entitled to summary judgment when "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2).

---

[3] On appeal, the City makes two factual assertions that are unsupported by any record evidence: (1) that Paul slipped in the "storm gutter" and not on the road; and (2) that she slipped on "a puddle of clear rainwater" rather than algae. There is no genuine dispute that Paul slipped on algae located in the street. During her deposition, Paul used a photograph to identify the street as the place that she slipped, and the City presents no contrary evidence. Paul also testified that she slid on a slimy substance that felt like algae, and Tuchalski confirmed that algae grows in the standing water discharged from her sump pump and is "usually slippery." Again, the City offers no contrary evidence. We address the City's unsupported factual assertions no further.

[4] Paul filed three nuisance-based causes of action against each defendant: public nuisance by abnormally dangerous activity; public nuisance by intentional conduct; and public nuisance by negligent conduct. For purposes of our analysis, we refer to these causes of action collectively as Paul's "nuisance-based claims."

4

¶9      When we review the circuit court's grant or denial of summary judgment, we do so de novo, using the same methodology used by that court.[5] *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315-17, 401 N.W.2d 816 (1987). We "examine the moving party's submissions to determine whether they constitute a prima facie case for summary judgment," and if so, we "examine the opposing party's submissions to determine whether there are material facts in dispute that entitle the opposing party to a trial." *Palisades Collection LLC v. Kalal*, 2010 WI App 38, ¶9, 324 Wis. 2d 180, 781 N.W.2d 503.

¶10     In the analysis that follows, we first address Acuity's summary judgment motion, and we then address the motion filed by the City.

## I

¶11     For reasons we now explain, we conclude that Acuity has not shown that it is entitled to judgment as a matter of law on the negligence and nuisance-based claims against it. We address the parties' arguments about the negligence claim and nuisance-based claims in turn.

### A

¶12     To prevail on a negligence claim, a plaintiff must prove four elements: (1) a duty of care on the part of the defendant; (2) a breach of that duty;

---

[5] In their appellate briefs, the parties generally focus their arguments on the reasons given by the circuit court for granting summary judgment and whether that reasoning does or does not hold up. Because we review the grant of summary judgment de novo and give no deference to the circuit court's determinations, *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315-17, 401 N.W.2d 816 (1987), we focus our analysis on whether the defendants' submissions demonstrate that "there is no genuine issue as to any material fact" and they are "entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2).

(3) a causal connection between the conduct and the injury; and (4) an actual loss or damage as a result of the injury. *Miller v. Wal-Mart Stores, Inc*., 219 Wis. 2d 250, 259-60, 580 N.W.2d 233 (1998). Acuity acknowledges that summary judgment is rarely granted in negligence cases, even if the facts are undisputed. *See Lambrecht v. Kaczmarczyk*, 2001 WI 25, ¶2, 241 Wis. 2d 804, 623 N.W.2d 751. However, Acuity asserts that this is one of those uncommon cases in which we can conclude that "no properly instructed, reasonable jury could find, based on the facts presented," that Tuchalski was negligent. *See id.*

¶13    Acuity focuses its summary judgment argument exclusively on the first element, the duty of care. Acuity relies on a municipal ordinance that makes the City's street superintendent "responsible for the maintenance … and cleaning of streets." WATERTOWN, WIS., MUNICIPAL CODE § 174-2.[6] Acuity argues that it is entitled to judgment as a matter of law on the negligence claim because Paul undisputedly fell in the public street and, it contends, Tuchalski had "no duty" to Paul concerning any algae buildup on the street. More specifically, Acuity made the following argument to the circuit court: "The City of Watertown owns and maintains the public streets. Tuchalski, a private landowner, does not. Because [Paul] fell in the public street, Acuity's insured, Tuchalski, did not owe her any

---

[6] The City's ordinance provides in full:

> The Street Superintendent shall be responsible for the maintenance, reconstruction and cleaning of streets, the removal of snow and ice therefrom, the maintenance of bridges and storm sewers, the collection of garbage and refuse materials, recycling, the destruction and removal of noxious weeds and the performance of such other services as may be required by the Public Works Commission.

WATERTOWN, WIS., MUNICIPAL CODE § 174-2 (through March 2021).

6

duty of care." Acuity echoes this same argument on appeal, arguing that "Tuchalski did not own, or have control of, the public street in front of her house and had no duty to maintain it. Because Tuchalski had no duty, the negligence analysis must stop there."

¶14 Acuity's argument is inconsistent with how the duty of care is understood under Wisconsin law. In Wisconsin, every person has a duty to use ordinary care in all of their activities and, when a person fails to exercise ordinary care, that person is negligent. *Gritzner v. Michael R.*, 2000 WI 68, ¶¶20-23, 235 Wis. 2d 781, 611 N.W.2d 906. A person fails to use ordinary care when that person "does something (or fails to do something) that a reasonable person would recognize as creating an unreasonable risk of injury or damage to a person or property." *Id.*, ¶22 (citations omitted).

¶15 Although Acuity's argument is premised on the assertion that Tuchalski had no duty to "maintain" the street, our supreme court has rejected that framework for the analysis. The court has explained that an alleged tortfeasor's conduct "'is not examined in terms of whether or not there is a duty to do a specific act, but rather whether the conduct satisfied the duty placed upon individuals to exercise that degree of care as would be exercised by a reasonable person under the circumstances.'" *Nichols v. Progressive N. Ins. Co.*, 2008 WI 20, ¶45, 308 Wis. 2d 17, 746 N.W.2d 220 (quoting *Gritzner*, 235 Wis. 2d 781, ¶24). By framing the issue as whether Tuchalski had "a duty to maintain the street," Acuity asks the wrong question. There can be no doubt that Tuchalski has "a duty to exercise ordinary care under the circumstances" so that the sump pump

discharge from her property did not create an unreasonable risk of injury to Paul.[7] *See, e.g.*, ***Behrendt v. Gulf Underwriters Ins. Co.***, 2009 WI 71, ¶21, 318 Wis. 2d 622, 768 N.W.2d 568 (concluding that a manufacturer had a "duty to exercise ordinary care under the circumstances so that its [policies] did not create an unreasonable risk of injury" to third parties).  This remains true regardless of whether Paul owned or had exclusive control over the street.

¶16    We now address and reject the several arguments Acuity makes to the contrary.  Acuity argues that ***Hansen v. Schmidman Properties, Inc.***, 16 Wis. 2d 639, 115 N.W.2d 495 (1962) supports the proposition that Tuchalski had no duty with regard to an unsafe condition of a public street.  Acuity's reliance on ***Hansen*** is misplaced.  In ***Hansen***, our supreme court found that a defendant property owner was not liable when a plaintiff slipped on ice that had accumulated on a driveway apron that was part of the public street.  ***Id.*** at 641.  As the court explained, "'the care and maintenance [of the road and driveway] clearly rests upon the municipality.'"  ***Id.*** at 642 (quoted source omitted).  However, the ***Hansen*** opinion did not limit the duty of ordinary care.  Instead, it is based on the narrower premise that, in the absence of a statutory provision to the contrary, property owners are not required to keep a public street "'free from ice and snow coming thereon from natural causes or the acts of others.'"  ***Id.*** at 644 (quoted source omitted).

---

[7] Because our decision that Acuity is not entitled to summary judgment on the negligence claim is based on the duty of ordinary care, we need not address the local ordinances cited by Paul that place some responsibility on property owners for debris they place in the roadway.  We discuss these ordinances as needed below in other sections of this opinion.  We also place no reliance on cases cited by Paul, including ***Walley v. Patake***, 271 Wis. 530, 74 N.W.1084 (1956), and ***Smith v. Clayton Construction Co.***, 189 Wis. 91, 206 N.W. 67 (1926), that address liability for obstructions on public sidewalks, not liability for obstructions on public streets.

¶17   Acuity also appears to argue that, since the City's ordinance charges the City with maintaining and cleaning public streets, Tuchalski is absolved of any duty with regard to any debris she causes to be placed in the street. We reject this argument for two reasons. First, as our supreme court has explained, "a municipality's non-delegable duty is not necessarily an exclusive duty." *Physicians Plus Ins. Corp. v. Midwest Mut. Ins. Co.*, 2002 WI 80, ¶48, 254 Wis. 2d 77, 646 N.W.2d 777. In this case, the City's ordinances do not unequivocally bestow Watertown with an exclusive duty to clean the streets.[8] Second, even if the City's duty to maintain the public streets could be considered "exclusive," that circumstance would not absolve property owners (or anyone else) of their duty of ordinary care to not create an unreasonably dangerous condition on a public street. As Paul explains, if Acuity's argument were correct, a property owner could dump a pail of glass and nails on a street and escape liability on the ground that her duty of care ended at her property line.

¶18   Finally, to the extent that Acuity's "no duty" argument relies in any way on its assertion that this was a "permitted discharge," we are not persuaded. Acuity does not identify any terms of the permit in question, nor does Acuity point to any law which would absolve Tuchalski of her duty of ordinary care based on a curb cut permit issued by the City.

---

[8] *Compare* WATERTOWN, WIS., MUNICIPAL CODE § 174-2 (providing that the "street superintendent shall be responsible… for cleaning of streets") *with id.* § 457-18 C (requiring the "owner, occupant or person in charge of private premises who places, causes or permits to remain any [dirt, rubbish, letter, debris or material of any kind] upon any street" to "immediately remove said materials at no cost to the City"). In her deposition, the City's engineer confirmed that, in situations where water discharged from a private residence was interfering with the public right-of-way, the City would send the homeowner a letter requesting that they remedy the situation or face a fine.

¶19     In sum, we conclude that Tuchalski had a duty to exercise ordinary care under the circumstances so that the sump pump discharge from her property did not create an unreasonable risk of injury to Paul.  Contrary to Acuity's assertion, that duty does not automatically end at her property line.  Therefore, Acuity has not shown that it is entitled to judgment as a matter of law on the duty of care element of Paul's negligence claim.  As mentioned above, Acuity makes no argument about the other elements of negligence (breach, causation, and damages), nor does it make any argument about public policy factors[9]—as Acuity states, it "stopped the analysis after duty, and stands by that position on appeal." Accordingly, we conclude that Acuity fails to show that it is entitled to summary judgment dismissing the negligence claim against it.

**B**

¶20     We now address Paul's nuisance-based claims against Acuity.  "A nuisance is a condition or activity which unduly interferes with the use of land or a public place." *Physicians Plus*, 254 Wis. 2d 77, ¶21.  Here, Paul alleges that Tuchalski is liable for creating or maintaining a "public nuisance," which is generally defined as "a condition or activity which substantially or unduly interferes with the use of a public place or with the activities of the entire community." *Id.*, ¶2.  Wisconsin courts have long held that "obstruction[s] ... or encroachment[s]" that "unnecessarily impede[] or incommode[] the lawful use" of a public road can constitute a public nuisance.  *Id.*, ¶21 (quoting *Hubbel v. Goodrich*, 37 Wis. 84, 86, (1875)).

---

[9] *See **Behrendt v. Gulf Underwriters Ins. Co.***, 2009 WI 71, ¶29, 318 Wis. 2d 622, 768 N.W.2d 568 (explaining that public policy factors may preclude liability for negligence as a matter of law, even if all of the elements of negligence are satisfied).

¶21    Paul filed three public nuisance-based causes of action against Acuity:  public nuisance by abnormally dangerous activity; public nuisance by intentional conduct; and public nuisance by negligent conduct.  Although the elements of these claims differ in certain respects, Acuity's arguments primarily focus on whether Paul can prove "the existence of a public nuisance," which is a common element of the three claims.  *See* WIS JI—CIVIL 1928 (Public Nuisance: Negligent Conduct); WIS JI—CIVIL 1930 (Public Nuisance: Abnormally Dangerous Activity: Strict Liability); WIS JI—CIVIL 1932 (Public Nuisance: Intentional Conduct).  When determining the existence of a public nuisance, the trier of fact "considers many factors, including, among others, the nature of the activity, the reasonableness of the use of the property, [the] location of the activity, and the degree or character of the injury inflicted or right impinged upon."[10] *Physicians Plus*, 254 Wis. 2d 77, ¶2 (citing *State v. Quality Egg Farm, Inc.*, 104 Wis. 2d 506, 520, 311 N.W.2d 650 (1981)).

¶22    Acuity makes four related arguments in support of its position that the standing water and algae growth in front of Tuchalski's home did not constitute a public nuisance as a matter of law.  We address and reject each of these arguments.

¶23    First, Acuity contends that "the algae growth cannot be said to interfere with the comfortable enjoyment of the entire community because Paul is

---

[10] In *Quality Egg Farm*, our supreme court stated that these determinations would be made by "the trial court."  *See generally State v. Quality Egg Farm, Inc.*, 104 Wis. 2d 506, 515-17, 311 N.W.2d 650 (1981).  However, in that case, our supreme court was reviewing the determinations made by the court following a bench trial.  *Id.* at 512.  The subsequent discussion in the *Quality Egg Farm* opinion confirms that these determinations are made by the "trier of fact," and not by a court as a matter of law.  *See id.* at 521.

the sole individual who has taken issue with the algae growth." Acuity points to no law suggesting that the number of people injured by an unsafe condition is dispositive and, indeed, the law is to the contrary. In *Physicians Plus*, for example, the visibility of a stop sign was obstructed by untrimmed tree branches, and two motorists were injured in a single accident that was allegedly caused by the obstruction. *Physicians Plus*, 254 Wis. 2d 77, ¶5. Our supreme court explained that "[t]he number of people affected does not strictly define a public nuisance," and that "it is not ... necessary that the entire community be affected ..., so long as the nuisance will interfere with those who come in contact with it in the exercise of a public right ...." *Id.* at ¶21 & n.16 (quoting RESTATEMENT (SECOND) OF TORTS, § 821B (1979)).

¶24     Acuity's second argument depends on the undisputed fact that Paul was a pedestrian walking on a public street. According to Acuity, the street was "constructed for vehicles, not pedestrians," and "common sense dictates that the community does not frequent or congregate in the public street." To the extent that Acuity means to argue that there is no "community interest" at issue because the street in front of Tuchalski's house is not a "public place," we disagree. Acuity cites no law that would allow us to determine whether a place was "public" based on the particular use of that space by a particular injured plaintiff. But even if case law would support making such a distinction, we disagree with Acuity's assertion that the street in question was not designed for foot traffic. It is undisputed that parallel parking was allowed on this street and, therefore, motorists would be required to walk on the street when exiting and returning to their vehicles, as Paul did here. Moreover, it is undisputed that there is no sidewalk in front of Tuchalski's home. Therefore, pedestrians who did not wish to

trespass when walking in Tuchalski's neighborhood would have to walk on the street.

¶25 Third, Acuity argues that "Paul was a guest, and not a member of the community." But Acuity cites no law to support its apparent argument that we are to determine whether an unsafe condition constitutes a public nuisance based on whether a member of the public injured by that condition resides in any particular neighborhood. We reject this undeveloped argument on that basis.

¶26 Finally, Acuity argues that "a reasonable person would agree that it is appropriate for algae growth—a natural substance—to be found on a public street." To the extent that Acuity contends a reasonable person might reach that conclusion, we agree. However, Acuity does not argue that no reasonable person could conclude that the algae growth in this case constituted "a significant interference with ... the public safety ...." WIS JI—CIVIL 1928, 1930, 1932. Acuity fails to demonstrate that a properly instructed, reasonable jury would be required to find, based on the facts presented, that the algae growth was not a public nuisance.[11]

¶27 For these reasons, we conclude that Acuity has not established a prima facie case that the algae growth was not a public nuisance. At best, Acuity has raised arguments that might ultimately persuade the trier of fact (here, a jury) that the algae growth in this case was not a public nuisance. However it has not

---

[11] In the alternative, Acuity also argues that, even if the algae growth constitutes a public nuisance, Tuchalski abated the nuisance by regularly cleaning the street in front of her home. We note that Acuity's argument about abatement would not necessarily defeat Paul's claims for intentional conduct or abnormally dangerous activity. *See* WIS JI—CIVIL 1930, 1932. As for the negligence-based nuisance claims, we conclude that, at best, there is a genuine dispute of material fact about whether Tuchalski failed to abate the nuisance. *See* WIS JI—CIVIL 1928.

shown that such a determination is required as a matter of law. Accordingly, Acuity fails to show that it is entitled to summary judgment dismissing the nuisance claim against it.

## II

¶28 We now address the City's motion for summary judgment. Paul advances the same legal claims against the City as she does against Acuity, but these claims are subject to an additional impediment—governmental immunity.

¶29 The governmental immunity statute, WIS. STAT. § 893.80(4), provides that no suit may be brought against a governmental entity, its agents, or its employee "for acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions." This language, which applies to negligence and nuisance-based claims against Wisconsin municipalities alike, *Knoke v. City of Monroe*, 2021 WI App 6, ¶41, 395 Wis. 2d 551, 953 N.W.2d 889, generally immunizes governmental entities from suit for "any acts that involve the exercise of discretion," *Engelhardt v. City of New Berlin*, 2019 WI 2, ¶22, 385 Wis. 2d 86, 921 N.W.2d 714. In our analysis, we assume that the City was negligent, and we focus "'on whether the municipal action (or inaction) upon which liability is premised is entitled to immunity under the statute, and if so, whether one of the judicially-created exceptions to immunity applies.'" *Knoke*, 395 Wis. 2d 551, ¶36 (quoted source omitted). The application of the immunity statute and its exceptions presents a question of law, which we review de novo. *Id.*

¶30 Here, there is no dispute that the City is a municipal entity that is immune from liability for Paul's claims unless one of the recognized exceptions to WIS. STAT. § 893.80(4) applies. Paul's argument focuses on the ministerial duty exception. Pursuant to this exception, a governmental entity can be liable for

damages that result from the performance of a duty that is purely "ministerial." ***Lister v. Board of Regents of Univ. of Wis. Sys.***, 72 Wis. 2d 282, 300, 240 N.W.2d 610 (1976). A ministerial duty is one that is "absolute, certain and imperative, involving merely the performance of a specific task when the law imposes, prescribes and defines the time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion." ***Id.*** at 301.

¶31 Paul argues that the Watertown ordinances impose a ministerial duty on the City related to maintenance of public streets. Paul cites to WATERTOWN, WIS., MUNICIPAL CODE § 174-2, discussed above, which provides that the street superintendent "shall be responsible for the maintenance … and cleaning of streets." She also points to ***id.*** § 457-18 E, which provides that, in the event that a property owner does not remove materials and debris it placed in the street, "the City shall cause the removal of such materials ...." Finally, she points to ***id.*** § 390-7 A & B, which requires that city officials "make periodic inspections and inspections upon complaint" and to "cause the abatement" of public nuisances.

¶32 Paul appears to acknowledge that the street superintendent's duty to maintain the streets is "general," and therefore not "ministerial." However, she contends that the duty to inspect the streets and abate public nuisances is "specific" and therefore "ministerial," and that the City violated that ministerial duty when it failed to inspect the street in front of Tuchalski's house.

¶33 We do not agree that the ordinance cited by Paul imposes a ministerial duty. Although the ordinance imposes an *affirmative* duty on the City, that is not the correct framework for analysis. Rather, the question is whether the duty is prescribed with s*uch specificity* that *nothing remains for discretion.* ***Lister***, 72 Wis. 2d at 301. WATERTOWN, WIS., MUNICIPAL CODE § 390-7 requires inspection

and abatement, but does not designate a particular method or frequency of inspection, nor does it designate any particular manner by which nuisances should be abated. Plainly, the ordinance allows significant discretion in the time, mode and occasion for the performance of any periodic inspections and abatement efforts. *See Knoke*, 395 Wis. 2d 551, ¶46.

¶34 To the extent that Paul relies on *Physicians Plus* to support her argument that the City is not immune from liability, that case is inapt. The *Physicians Plus* court considered whether defendants, including a county and a town, were entitled to summary judgment for failing to abate a nuisance. However, governmental immunity was not raised as a defense in that case, the court was not asked to perform a ministerial duty analysis, and it did not decide that the duty at issue in that case was ministerial. *See American Fam. Mut. Ins. Co. v. Outagamie Cnty*., 2012 WI App 60, ¶17, 341 Wis. 2d 413, 816 N.W.2d 340 ("[T]he court [in *Physicians Plus*] was never asked to determine whether the county and the town were immune from suit under WIS. STAT. § 893.80(4) or whether they had a ministerial duty to trim the branches.").

¶35 Accordingly, we conclude that there is no genuine dispute of material fact regarding the City's immunity from liability, and that the City is entitled to judgment as a matter of law.[12]

---

[12] We need not address the City's other arguments about the negligence and nuisance-based claims because our determination as to governmental immunity is dispositive.

**CONCLUSION**

¶36 For the reasons stated above, we reverse the circuit court's grant of summary judgment in favor of Acuity, affirm the circuit court's grant of summary judgment in favor of the City, and remand for further proceedings consistent with this opinion.

*By the Court.*—Order affirmed in part; reversed in part and cause remanded.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.